## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ARSENAL RESOURCES DEVELOPMENT LLC, *et al.* | ) Case No. 19-12347 (BLS) |
| | ) |
| | ) (Jointly Administered) |
| Debtors.[1] | ) |
| | ) **Docket Ref. No. 14** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

Upon the motion, dated November 8, 2019 (the "**DIP Motion**"), of the DIP Borrower (defined below), and the other debtors and debtors-in-possession (collectively, the "**Debtors**"), in the above-referenced chapter 11 cases (the "**Cases**"), seeking entry of an interim order, which was entered by this Court on November 12, 2019 [Docket No. 99]  (the "**Interim Order**") and this final order (this "**Final Order**") pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 507, and 552 of chapter 11 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 4001-

---

[1]    The debtors in the chapter 11 cases, along with the last four digits of each debtor's United States federal tax identification number, are: Arsenal Resources Development LLC (4072); Arsenal Energy Holdings LLC (6279); Arsenal Resources Intermediate Holdings LLC (5901); Arsenal Resources Energy LLC (2820); Arsenal Resources Development Holdings 2 LLC (3020); Arsenal Resources Development Holdings 1 LLC (9647); Arsenal Gas Marketing LLC (1113); Arsenal Midstream LLC (9654); Arsenal Water LLC (2465); Ulysses Gathering LLC (6546); Mar Key LLC (5428); Arsenal Resources LLC (3422); River Ridge Energy Holdings, LLC (8135); River Ridge Energy, LLC (5623); River Ridge Pennsylvania, LLC (5444); River Ridge Operating, LLC (4051); and Seneca-Upshur Petroleum, LLC (9204).  The debtors' mailing address is 6031 Wallace Road Ext., Suite 300, Wexford, PA 15090.

1, 4001-2 and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") that, among other things:

(i)      authorizes Arsenal Resources Development LLC, a Delaware limited liability company ("**ARD LLC**") designated as the "Borrower" under, and as defined in, the DIP Credit Agreement (defined below) (the "**DIP Borrower**") to obtain, and the other guarantors under the DIP Loan Documents (defined below) (collectively, the "**DIP Guarantors**") to unconditionally guaranty, jointly and severally, the DIP Borrower's obligations in respect of, senior secured priming and superpriority postpetition financing, which if approved on a final basis would consist of a revolving credit facility for up to $45,000,000 (the "**DIP Revolver Facility**"), including a letter of credit sub-facility for up to $5,000,000, which, for the avoidance of doubt, shall reduce availability under the DIP Revolver Facility on a dollar-for-dollar basis (the "**DIP LC Sub-Facility**"), and together with the DIP Revolver Facility, and the Roll Up (defined below), collectively, the "**DIP Facility,**" and the loans extended under the DIP Facility, including the Roll Up DIP Loans (defined below) the "**DIP Loans**"), pursuant to the terms of (x) this Final Order, (y) that certain Senior Secured Super-Priority Debtor-in-Possession Credit Agreement (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "**DIP Credit Agreement**"),[2] by and among the DIP Borrower, Citibank, N.A., as administrative agent (in such capacity, the "**DIP Agent**"), and the other financial institutions that are from time to time party to the DIP Credit Agreement as "Lenders" under, and as defined in, the DIP Credit Agreement (the "**DIP Lenders**," together with the DIP Agent, the Issuing Banks, the Secured Swap Parties and the other Secured Parties (as such terms are defined in the DIP Credit Agreement) and any other party to which DIP Obligations (defined below) are owed, the "**DIP**

---

[2]      A form of the substantially final DIP Credit Agreement is attached to the DIP Motion as **Exhibit B**.

**Secured Parties**"), substantially in the form attached to the DIP Motion, and (z) any and all other Loan Documents (as defined in the DIP Credit Agreement, and together with the DIP Credit Agreement, the "**DIP Loan Documents**") to: (A) fund, among other things, ongoing working capital, general corporate expenditures, and other financing needs of the Debtors, (B) provide letters of credit for the account of any of the Debtors, (C)  convert to DIP Obligations under the DIP Loan Documents, as provided in this Final Order, $45,000,000 of the outstanding principal amount of the Revolving Loans (as defined in the Prepetition RBL Credit Agreement (defined below)) held by the DIP Lenders as of the Petition Date (defined below) ratably in accordance with their respective shares of the DIP Revolver Facility (including the DIP LC Sub-Facility) (the "**Roll Up**," and such converted Revolving Loans, the "**Roll Up DIP Loans**"), (D) pay certain transaction fees and other costs and expenses of administration of the Cases, and (E) pay fees and expenses (including reasonable attorneys' fees and expenses) and interest and other payments owed to the DIP Secured Parties under the DIP Loan Documents and this Final Order;

(ii)      approves the terms of, and authorizes the Debtors to execute and deliver, and perform under, the DIP Loan Documents and authorizes and directs the Debtors to perform such other and further acts as may be required in connection with the DIP Loan Documents and this Final Order, including to perform the Commitment Letter Indemnity Obligations (as defined in the DIP Motion);

(iii)     subject to the Carve Out, grants (x) to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, Liens (as defined in the DIP Credit Agreement) on all of the DIP Collateral (defined below) pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, which Liens shall be senior to the Primed Liens (defined below) and the Adequate Protection Liens (defined below), and shall be junior solely to any valid, enforceable, and non-avoidable

3

Liens (including Excepted Liens (under and as defined in the DIP Credit Agreement)) that are (A) in existence on the Petition Date, (B) either perfected as of the Petition Date or perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code, and (C) senior in priority to the Prepetition RBL Liens, the Prepetition Term Loan Liens, or the Prepetition Seller Note Liens (each defined below; all such Liens, collectively, the "**Prepetition Prior Liens**") and (y) to the DIP Secured Parties, pursuant to section 364(c)(1) of the Bankruptcy Code, superpriority administrative claims having recourse to all prepetition and postpetition property of the Debtors' estates, now owned or hereafter acquired and the proceeds of each of the foregoing, including, upon entry of this Final Order, any Debtor's rights under section 549 of the Bankruptcy Code and the proceeds thereof, and upon entry of this Final Order, the proceeds of Avoidance Actions (defined below);

(iv)      authorizes the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**"), including Cash Collateral (if any) in which (a) the DIP Secured Parties and/or the Prepetition RBL Secured Parties (defined below) have a Lien or other interest, (b) the Prepetition Term Loan Secured Parties (defined below) have a Lien or other interest, and (c) the Prepetition Seller Note Secured Parties (defined below) have a Lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this Final Order or otherwise;

(v)      vacates the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order;

(vi)      subject to the Carve Out, solely to the extent of any diminution in value of their collateral, grants (x) the Prepetition RBL Secured Parties, as of the Petition Date and in accordance

with the relative priorities set forth herein, the Prepetition RBL Adequate Protection (defined below), which consists of, among other things, Prepetition RBL Adequate Protection Liens (defined below), Prepetition RBL Adequate Protection Superpriority Claims (defined below), and the Roll Up; (y) the Prepetition Term Loan Secured Parties (defined below), as of the Petition Date and in accordance with the relative priorities set forth herein, the Prepetition Term Loan Adequate Protection (defined below); and (z) the Prepetition Seller Note Secured Parties (defined below), as of the Petition Date and in accordance with the relative priorities set forth herein, the Prepetition Seller Note Adequate Protection (defined below);

(vii)    waives the Debtors' right to surcharge collateral pursuant to section 506(c) of the Bankruptcy Code;

(viii)    provides that the DIP Secured Parties, the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties and the Prepetition Seller Note Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply; and

(ix)    provides for the immediate effectiveness of this Final Order and waives any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

Having considered the DIP Motion, the DIP Credit Agreement, the *Declaration of Allen Goetz, the Debtors' Chief Financial Officer, in Support of Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), the *Declaration of Avi Robbins in Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "**Robbins**

**Declaration**") and the evidence submitted or proffered at the hearing on November 12, 2019 to consider entry of the Interim Order (the "**Interim Hearing**") and at the hearing held on December 4, 2019 to consider entry of this Final Order (the "**Final Hearing**"); and in accordance with Bankruptcy Rules 2002, 4001(b), 4001(c), 4001(d), and 9014, and all applicable Local Rules, notice of the DIP Motion, the Interim Hearing, and the Final Hearing having been provided pursuant to Bankruptcy Rule 4001; and it appearing that approval of the relief requested in the DIP Motion is necessary and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for the continued operation of the Debtors' business and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Loan Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THIS COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    **Petition Date**.  On November 8, 2019 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (this "**Court**").  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No statutory committee of unsecured creditors (to the extent such committee is appointed, the "**Committee**"), trustee, or examiner has been appointed in the Cases.

---

[3]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

B.     **Jurisdiction and Venue**.  This Court has core jurisdiction over the Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and other predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and the Local Rules.

C.     **Notice**.  The Final Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001.  Notice of the Final Hearing requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties in interest, including: (a) the Office of the United States Trustee for the District of Delaware (the "**United States Trustee**"); (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the DIP Agent and counsel thereto; (d) the Prepetition RBL Agent and counsel thereto; (e) the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders and counsel thereto; (f) the Prepetition Seller Note Agent and the Prepetition Seller Noteholders and counsel thereto; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; (i) the United States Securities and Exchange Commission; (j) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (k) the state attorneys general for states in which the Debtors conduct business; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Under the circumstances, such notice of the DIP Motion, the relief requested therein and the Final Hearing complies with Bankruptcy Rule 4001 and the Local Rules, and no other notice need be provided for entry of this Final Order.

D.    **Debtors' Stipulations Regarding the Prepetition RBL Facility**.  Subject only to the rights of parties in interest that are specifically set forth in Paragraph 7 below, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree (Paragraph D hereof shall be referred to herein collectively as the "**Debtors' RBL Stipulations**") as follows:

(i)    Prepetition RBL Credit Facility.  Pursuant to that certain Credit Agreement, dated as of December 21, 2018 (as amended, restated, or otherwise modified from time to time, the "**Prepetition RBL Credit Agreement**," and collectively with any other agreements and documents executed or delivered in connection therewith, including the "Loan Documents" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition RBL Loan Documents**"), among (a) ARD LLC, as Borrower (defined therein), (b) the lenders from time to time party thereto (collectively, the "**Prepetition RBL Lenders**"), (c) Citibank, N.A., as administrative agent (in such capacity, the "**Prepetition RBL Agent**"), (d) BMO Harris Bank, N.A. and Société Générale, as Co-syndication Agents, (e) CIT Finance LLC, as Documentation Agent, and (f) Citigroup Global Markets Inc., as Lead Arranger (the Prepetition RBL Lenders, Prepetition RBL Agent, and all other Secured Parties (as defined in the Prepetition RBL Credit Agreement), the "**Prepetition RBL Secured Parties**"), the Prepetition RBL Secured Parties agreed to extend loans and other financial accommodations to, and issue letters of credit for the account of, the Borrower (as defined in the Prepetition RBL Credit Agreement) pursuant to the Prepetition RBL Loan Documents.  All obligations of the Debtors arising under the Prepetition RBL Credit Agreement (including the "Obligations" as defined therein, whether or not arising under the Prepetition RBL Loan Documents) or the other

Prepetition RBL Loan Documents shall collectively be referred to herein as the "**Prepetition RBL Obligations**."

(ii)    Prepetition RBL Liens and Prepetition RBL Collateral.  Pursuant to the Security Instruments (as defined in the Prepetition RBL Credit Agreement and as such documents were amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition RBL Collateral Documents**"), by and among ARD LLC, and its subsidiaries party thereto (collectively, the "**Prepetition RBL Grantors**") and the Prepetition RBL Agent, each Prepetition RBL Grantor granted to the Prepetition RBL Agent, for the benefit of the Prepetition RBL Agent and the other Prepetition RBL Secured Parties, to secure the Prepetition RBL Obligations, a first priority security interest in and continuing Lien (the "**Prepetition RBL Liens**") on substantially all of such Prepetition RBL Grantors' assets and properties (which, for the avoidance of doubt, includes Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (other than "Excluded Assets," as such term is defined in the Prepetition RBL Credit Agreement).  All "Collateral" as defined in the Prepetition RBL Credit Agreement granted or pledged by such Prepetition RBL Grantors pursuant to any Prepetition RBL Collateral Document or any other Prepetition RBL Loan Document shall collectively be referred to herein as the "**Prepetition RBL Collateral**."  As of the Petition Date, (a) the Prepetition RBL Liens (I) are legal, valid, binding, enforceable, and perfected Liens, (II) were granted to, or for the benefit of, the Prepetition RBL Secured Parties for fair consideration and reasonably equivalent value, (III) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein), and (IV) are subject and subordinate only to (A) the DIP Liens (defined below), (B) the Carve Out (defined below), and

(C) the Prepetition Prior Liens, and (b) (I) the Prepetition RBL Obligations constitute legal, valid, and binding obligations of the Loan Parties (as such term is defined in the Prepetition RBL Credit Agreement), enforceable in accordance with the terms of the applicable Prepetition RBL Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (II) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Prepetition RBL Obligations exist, (III) no portion of the Prepetition RBL Obligations or any payments made to any or all of the Prepetition RBL Secured Parties are subject to avoidance, disallowance, disgorgement, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (IV) the obligations of each Guarantor (as defined in the Prepetition RBL Credit Agreement) under that certain Guaranty Agreement (as defined in the Prepetition RBL Credit Agreement), the Security Instruments (as defined in the Prepetition RBL Credit Agreement), and the other Prepetition RBL Loan Documents shall continue in full force and effect to unconditionally guaranty the Prepetition RBL Obligations notwithstanding any use of Cash Collateral permitted hereunder or any financing and financial accommodations extended by the DIP Secured Parties to the Debtors pursuant to the terms of this Final Order or the DIP Loan Documents.

(iii)    <u>Amounts Owed under Prepetition RBL Loan Documents</u>.  As of the Petition Date, the applicable Debtors owed the Prepetition RBL Secured Parties, pursuant to the Prepetition RBL Loan Documents, without defense, counterclaim, reduction or offset of any kind, in respect of loans made, letters of credit issued, and other financial accommodations made by the Prepetition RBL Secured Parties, an aggregate principal amount of approximately $117 million, plus an issued and outstanding letter of credit in the amount of approximately $28 million *plus* all

accrued and hereafter accruing and unpaid interest thereon, *plus* any additional fees, expenses (including any reasonable and documented attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition RBL Loan Documents) and other amounts now or hereafter due under the Prepetition RBL Loan Documents.

(iv)    Release of Claims.  Subject to Paragraph 7 below each Debtor and its estate shall be deemed to have forever waived, discharged, and released each of the Prepetition RBL Secured Parties and their respective affiliates, assigns, or successors and the respective members, managers, equity holders, affiliates, agents, attorneys, financial advisors, consultants, officers, directors, employees, and other representatives of the foregoing (all of the foregoing, collectively, the "**Prepetition RBL Secured Party Releasees**") from any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action (including causes of action in the nature of "lender liability"), defenses, setoff, recoupment, other offset rights, and other rights of disgorgement or recovery against any and all of the Prepetition RBL Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the Prepetition RBL Obligations, the Prepetition RBL Liens, or the debtor-creditor relationship between any of the Prepetition RBL Secured Parties, on the one hand, and any of the Debtors, on the other hand, including (a) any recharacterization, subordination, avoidance, disallowance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law, or municipal law and (b) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition RBL Obligations or any payments or other transfers made on account of the Prepetition RBL Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition RBL Liens securing the Prepetition RBL Obligations, including any right or basis to seek any disgorgement or recovery of

payments of cash or any other distributions or transfers previously received by any of the Prepetition RBL Secured Party Releasees.

E. **Debtors' Stipulations Regarding the Prepetition Term Loan Facility**. Subject only to the rights of parties in interest that are specifically set forth in Paragraph 7 below, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree (Paragraph E hereof shall be referred to herein as the "**Debtors' Term Loan Stipulations**") as follows:

(i) <u>Prepetition Term Loan Facility</u>. Pursuant to that certain Credit Agreement, dated as of December 21, 2018 (as amended, restated, or otherwise modified from time to time, the "**Prepetition Term Loan Credit Agreement**," and collectively with any other agreements and documents executed or delivered in connection therewith, including the "Loan Documents" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition Term Loan Documents**"), among (a) Arsenal Resources Development Holdings 1 LLC ("**ARD Holdings I**"), as Borrower (as defined therein and, as defined herein, the "**Prepetition Term Loan Borrower"**), (b) the Lenders (as defined therein) from time to time party thereto (collectively, the "**Prepetition Term Loan Lenders**"), and (c) Chambers Energy Management, LP, as administrative agent (in such capacity, the "**Prepetition Term Loan Agent**" and together with the Prepetition Term Loan Lenders and any other party to which Prepetition Term Loan Obligations (defined below) are owed, the "**Prepetition Term Loan Secured Parties**"), the Prepetition Term Loan Secured Parties agreed to extend term loans and other financial accommodations to the Prepetition Term Loan Borrower pursuant to the Prepetition Term Loan Documents. All obligations of the Debtors arising under the Prepetition Term Loan Credit Agreement (including the "Obligations" as defined therein,

12

whether or not arising under the Prepetition Term Loan Documents) or the other Prepetition Term Loan Documents shall collectively be referred to herein as the "**Prepetition Term Loan Obligations**."

(ii)     Prepetition Term Loans and Prepetition Term Loan Collateral. Pursuant to the Security Instruments (as defined in the Prepetition Term Loan Credit Agreement and as such documents were amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition Term Loan Collateral Documents**"), by and among ARD Holdings I and the Prepetition Term Loan Agent, ARD Holdings I granted to the Prepetition Term Loan Agent, for the benefit of the Prepetition Term Loan Agent and the other Prepetition Term Loan Secured Parties, to secure the Prepetition Term Loan Obligations, a first priority security interest in and continuing Lien on substantially all of ARD Holdings I's assets and properties and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising.  All "Collateral" as defined in the Prepetition Term Loan Credit Agreement granted or pledged by ARD Holdings I pursuant to any Prepetition Term Loan Collateral Document or any other Prepetition Term Loan Document shall collectively be referred to herein as the "**Prepetition Term Loan Collateral**," and the Liens thereon shall be referred to as the "**Prepetition Term Loan Liens**."  As of the Petition Date, (a) the Prepetition Term Loan Liens (I) are legal, valid, binding, enforceable, and perfected Liens, (II) were granted to, or for the benefit of, the Prepetition Term Loan Secured Parties for fair consideration and reasonably equivalent value, (III) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein), and (IV) are subject and subordinate only to (A) the DIP Liens, (B) the Carve Out, and (C) the Prepetition Prior Liens, and (b) (I) the Prepetition Term Loan Obligations constitute legal,

valid, and binding obligations of the applicable Debtors, enforceable in accordance with the terms

of the applicable Prepetition Term Loan Documents (other than in respect of the stay of

enforcement arising from section 362 of the Bankruptcy Code), (II) no setoffs, recoupments,

offsets, defenses, or counterclaims to any of the Prepetition Term Loan Obligations exist, (III) no

portion of the Prepetition Term Loan Obligations or any payments made to any or all of the

Prepetition Term Loan Secured Parties are subject to avoidance, disallowance, disgorgement,

recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as

defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-

bankruptcy law, and (IV) the obligations of each Guarantor (as defined in the Prepetition Term

Loan Credit Agreement) under any Guarantee (as defined in the Prepetition Term Loan Credit

Agreement), the Security Instruments (as defined in the Prepetition Term Loan Credit Agreement),

and the other Prepetition Term Loan Documents shall continue in full force and effect to

unconditionally guaranty the Prepetition Term Loan Obligations notwithstanding any use of Cash

Collateral permitted hereunder or any financing and financial accommodations extended by the

DIP Secured Parties to the Debtors pursuant to the terms of this Final Order or the DIP Loan

Documents.

(iii)    <u>Amounts Owed under Prepetition Term Loan Documents</u>.  As of the

Petition Date, the applicable Debtors owed the Prepetition Term Loan Secured Parties, pursuant

to the Prepetition Term Loan Documents, without defense, counterclaim, reduction or offset of

any kind, in respect of loans made and other financial accommodations made by the Prepetition

Term Loan Secured Parties, an aggregate principal amount (including capitalized interest) of

approximately $233 million *plus* all accrued and unpaid cash interest thereon and any additional

fees, expenses (including any reasonable and documented attorneys', accountants', appraisers',

and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition

Term Loan Documents), and other amounts now or hereafter due under the Prepetition Term Loan

Documents.

(iv)    <u>Release of Claims</u>.  Subject to Paragraph 7 below, each Debtor and

its estate shall be deemed to have forever waived, discharged, and released each of the Prepetition

Term Loan Secured Parties and their respective affiliates, assigns, or successors and the respective

members, managers, equity holders, affiliates, agents, attorneys, financial advisors, consultants,

officers, directors, employees, and other representatives of the foregoing (all of the foregoing,

collectively, the "**Prepetition Term Loan Secured Party Releasees**") from any and all "claims"

(as defined in the Bankruptcy Code), counterclaims, causes of action (including causes of action

in the nature of "lender liability"), defenses, setoff, recoupment, other offset rights, and other rights

of disgorgement or recovery against any and all of the Prepetition Term Loan Secured Party

Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the

Prepetition Term Loan Obligations, the Prepetition Term Loans, or the debtor-creditor relationship

between any of the Prepetition Term Loan Secured Parties, on the one hand, and any of the

Debtors, on the other hand, including (a) any recharacterization, subordination, avoidance,

disallowance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy

Code or under any other similar provisions of applicable state law, federal law, or municipal law

and (b) any right or basis to challenge or object to the amount, validity, or enforceability of the

Prepetition Term Loan Obligations or any payments or other transfers made on account of the

Prepetition Term Loan Obligations, or the validity, enforceability, priority, or non-avoidability of

the Prepetition Term Loans securing the Prepetition Term Loan Obligations, including any right

or basis to seek any disgorgement or recovery of payments of cash or any other distributions or transfers previously received by any of the Prepetition Term Loan Secured Party Releasees.

F.    **Debtors' Stipulations Regarding the Prepetition Seller Notes**.    Subject only to the rights of parties in interest that are specifically set forth in Paragraph 7 below, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree (Paragraph F hereof shall be referred to herein as the "**Debtors' Seller Note Stipulations**" and, together with the Debtors' RBL Stipulations and the Debtors' Term Loan Stipulations, the "**Debtors' Stipulations**") as follows:

(i)    Prepetition Seller Notes.    Pursuant to: (a) that certain Seller Note, dated as of October 14, 2014 (as amended, supplemented, or otherwise modified from time to time, the "**Chambers Seller Note**"), in the original principal amount of $39,047,625.00, issued by Arsenal Energy Holdings LLC (f/k/a Mountaineer Energy Holdings, LLC and referred to herein as the "**Seller Note Issuer**") in favor of PDC Energy, Inc., as original seller, which note was sold and assigned pursuant to the Note Purchase Agreement, dated April 28, 2017, to Chambers Energy Capital II, LP, Chambers Energy Capital II, TE, LP and Chambers Energy Capital III, LP, as assignees and purchasers (the "**Chambers Noteholders**"); and (b) that certain Seller Note, dated as of October 14, 2014 in the original principal amount of $39,047,625.00, issued by the Seller Note Issuer in favor of LR-Mountaineer Holdings, L.P. (together with the Chambers Noteholders, the "**Prepetition Seller Noteholders**"),  (as amended, supplemented, or otherwise modified from time to time, the "**LRMH Seller Note**," and, together with the Chambers Seller Note, the "**Prepetition Seller Notes**"; the Prepetition Seller Notes, together with the ARHD 2 Guaranty, the ARDH 2 Collateral Agreement, the Collateral Agency Agreement, and the Subordination Agreement (each as defined in the Prepetition Seller Notes, as amended), are referred to herein as

16

the "**Prepetition Seller Note Documents**"), the Prepetition Seller Noteholders (or their respective predecessors) agreed to extend financial accommodations to the Seller Note Issuer pursuant to the Prepetition Seller Note Documents.  All obligations of the Debtors arising under the Prepetition Seller Notes (including the "Obligations" as defined therein, whether or not arising under the Prepetition Seller Note Documents) or the other Prepetition Seller Note Documents shall collectively be referred to herein as the "**Prepetition Seller Note Obligations**."

(ii)     Prepetition Seller Notes and Prepetition Seller Note Collateral. Pursuant to the Collateral Agreement, the Guaranty Agreement, the Collateral Agency Agreement (each as defined in the Prepetition Seller Notes) and the other Security Documents (as defined in the Collateral Agency Agreement) and as such documents were amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition Seller Note Collateral Documents**"), by and among the Seller Note Issuer and Arsenal Resources Development Holdings 2 LLC, as applicable (collectively, the "**Prepetition Seller Note Grantors**") and LR-Mountaineer Holdings, L.P., as collateral agent (the "**Prepetition Seller Note Agent**"), each Prepetition Seller Note Grantor granted to the Prepetition Seller Note Agent, for the benefit of the Prepetition Seller Note Agent and the Prepetition Seller Noteholders (collectively, the "**Prepetition Seller Note Secured Parties**"), to secure the Prepetition Seller Note Obligations, a first priority security interest in and continuing Lien on substantially all of such Prepetition Seller Note Grantors' assets and properties and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising.  All "Collateral" as defined in the Prepetition Seller Notes granted or pledged by such Prepetition Seller Note Grantors pursuant to any Prepetition Seller Note Collateral Document or any other Prepetition Seller Note Document shall collectively be referred to herein as the "**Prepetition Seller Note Collateral**" and the Liens thereon shall be

referred to as the "**Prepetition Seller Note Liens**."  As of the Petition Date, (a) the Prepetition Seller Note Liens (I) are legal, valid, binding, enforceable, and perfected Liens, (II) were granted to, or for the benefit of, the Prepetition Seller Note Secured Parties for fair consideration and reasonably equivalent value, (III) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein), and (IV) are subject and subordinate only to (A) the DIP Liens, (B) the Carve Out, and (C) the Prepetition Prior Liens, and (b) (I) the Prepetition Seller Note Obligations constitute legal, valid, and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Prepetition Seller Note Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (II) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Prepetition Seller Note Obligations exist, (III) no portion of the Prepetition Seller Note Obligations or any payments made to any or all of the Prepetition Seller Note Secured Parties are subject to avoidance, disallowance, disgorgement, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (IV) the obligations of the Guarantor (as defined in the Collateral Agency Agreement) under the Guaranty Agreement (as defined in the Collateral Agency Agreement), the Security Documents (as defined in the Collateral Agency Agreement), and the other Prepetition Seller Note Documents shall continue in full force and effect to unconditionally guaranty the Prepetition Seller Note Obligations notwithstanding any use of Cash Collateral permitted hereunder or any financing and financial accommodations extended by the DIP Secured Parties to the Debtors pursuant to the terms of this Final Order or the DIP Loan Documents.

(iii)     <u>Amounts Owed under Prepetition Seller Note Documents</u>.  As of the

Petition Date, the applicable Debtors owed the Prepetition Seller Note Secured Parties, pursuant

to the Prepetition Seller Note Documents, without defense, counterclaim, reduction or offset of

any kind, in respect of loans made and other financial accommodations made by the Prepetition

Seller Note Secured Parties, an aggregate principal amount (including capitalized interest) of

approximately $128 million *plus* all accrued and unpaid interest thereon and any additional fees,

expenses (including any reasonable and documented attorneys', accountants', appraisers', and

financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition

Seller Note Documents), and other amounts now or hereafter due under the Prepetition Seller Note

Documents.

(iv)     <u>Release of Claims</u>.  Subject to Paragraph 7 below, each Debtor and

its estate shall be deemed to have forever waived, discharged, and released each of the Prepetition

Seller Note Secured Parties and their respective affiliates, assigns, or successors and the respective

members, managers, equity holders, affiliates, agents, attorneys, financial advisors, consultants,

officers, directors, employees, and other representatives of the foregoing (all of the foregoing,

collectively, the "**Prepetition Seller Note Secured Party Releasees**") from any and all "claims"

(as defined in the Bankruptcy Code), counterclaims, causes of action (including causes of action

in the nature of "lender liability"), defenses, setoff, recoupment, other offset rights, and other rights

of disgorgement or recovery against any and all of the Prepetition Seller Note Secured Party

Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the

Prepetition Seller Note Obligations, the Prepetition Seller Notes, or the debtor-creditor relationship

between any of the Prepetition Seller Note Secured Parties, on the one hand, and any of the

Debtors, on the other hand, including (a) any recharacterization, subordination, avoidance,

disallowance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law, or municipal law and (b) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition Seller Note Obligations or any payments or other transfers made on account of the Prepetition Seller Note Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition Seller Notes securing the Prepetition Seller Note Obligations, including any right or basis to seek any disgorgement or recovery of payments of cash or any other distributions or transfers previously received by any of the Prepetition Seller Note Secured Party Releasees.

G.    <u>Cash Collateral</u>.   All of the cash of ARD LLC and the Prepetition RBL Grantors, including any cash in deposit accounts of the Debtors (except as set forth in this Paragraph below with respect to the Parent Company Debtors (as defined in the DIP Credit Agreement)), wherever located, that constitutes Prepetition RBL Collateral is Cash Collateral of the Prepetition RBL Agent and the other Prepetition RBL Secured Parties.  The Prepetition RBL Lenders have reserved their right to assert that cash of the Parent Company Debtors, including any cash in deposit accounts of the Parent Company Debtors, is Cash Collateral of the Prepetition RBL Agent and the other Prepetition RBL Secured Parties; and the Prepetition Term Loan Secured Parties and Prepetition Seller Note Secured Parties have reserved their right to contest any such assertions; and nothing in this Final Order shall prejudice the right of any Prepetition RBL Secured Party or any other party in interest to assert, determine or contest that any cash of a Parent Company Debtor is (or is not) Cash Collateral of such Prepetition RBL Secured Party.  All cash of ARD Holdings I (if any), including any cash in deposit accounts of ARD Holdings I, wherever located, that constitutes Prepetition Term Loan Collateral is Cash Collateral of the Prepetition Term Loan Agent and the other Prepetition Term Loan Secured Parties.  All cash of the Seller

Note Issuer and the other Prepetition Seller Note Grantors (if any), including any cash in deposit accounts of the Seller Note Issuer and any of the other Prepetition Seller Note Grantors, wherever located, that constitutes Prepetition Seller Note Collateral is Cash Collateral of the Prepetition Seller Note Secured Parties.

H.      **Findings Regarding the DIP Facility**.

(i)      Need for Postpetition Financing.  The Debtors need to obtain the DIP Facility and use Cash Collateral to, among other things, permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers, and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operational needs, and to otherwise preserve the value of the Debtors' estates.  The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to a successful reorganization and/or to otherwise preserve the enterprise value of the Debtors' estates and the Debtors require financing and authorization to use Cash Collateral in accordance with the terms of this Final Order and the DIP Loan Documents.

(ii)      No Credit Available on More Favorable Terms.  The Debtors have been and continue to be unable to obtain financing on more favorable terms from sources other than the DIP Secured Parties under the DIP Loan Documents and this Final Order.  The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured credit allowable only under sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code.  The Debtors are unable to obtain secured credit under section 364(d)(1) of the Bankruptcy Code without (a) granting to the DIP Secured Parties the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the DIP Liens and the DIP Superpriority Claims (defined below), (b)

allowing the DIP Secured Parties to provide the loans, letters of credit, and other financial accommodations under the DIP Facility (including the Roll Up DIP Loans) on the terms set forth herein and in the DIP Loan Documents, (c) granting to the Prepetition RBL Secured Parties the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the Prepetition RBL Adequate Protection and the conversion of certain Prepetition RBL Obligations into the Roll Up, (d) granting to the Prepetition Term Loan Secured Parties the rights, remedies, privileges, benefits, and protections provided herein, including the Prepetition Term Loan Adequate Protection, and (e) granting to the Prepetition Seller Note Secured Parties the rights, remedies, privileges, benefits, and protections provided herein, including the Prepetition Seller Note Adequate Protection (the foregoing described in clauses (a), (b) and (c), collectively, the **DIP Protections**”).

I.     **Financing**.  The DIP Secured Parties and, as applicable, the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties (together, the “**Prepetition Secured Parties**”) are willing to provide financing to the Debtors and/or consent to the use of Cash Collateral by the Debtors, subject to (i) the entry of this Final Order and (ii) the terms and conditions of the DIP Loan Documents.

J.     **Adequate Protection**.    The Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties each have agreed  to permit the Debtors’ continued use of, respectively the Prepetition RBL Collateral, the Prepetition Term Loan Collateral, and the Prepetition Seller Note Collateral, including the Cash Collateral subject to the terms and conditions set forth herein, including the protections afforded a party acting in “good faith” under section 364(e) of the Bankruptcy Code.  In addition, the DIP Facility contemplated hereby provides for a priming of the Primed Liens pursuant to section 364(d)

of the Bankruptcy Code.  The Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties are entitled to the adequate protection as set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the DIP Motion and on the record presented to this Court at the Interim Hearing and the Final Hearing, the proposed adequate protection arrangements, use of the Cash Collateral, and extensions of credit under the DIP Facility contemplated hereby are fair and reasonable, reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration for the consent of the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties.  The Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties consent to the relief set forth herein, pursuant to the Prepetition RBL Loan Documents, Prepetition Term Loan Documents, and Prepetition Seller Note Documents, and, in any event, the prepetition Liens and security interests of such parties are adequately protected pursuant to the terms of this Final Order.  Notwithstanding anything to the contrary herein, the consent of the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties to the DIP Facility and to the priming of the Prepetition RBL Liens, the Prepetition Term Loan Liens, and the Prepetition Seller Note Liens by the DIP Liens is expressly limited to the present DIP Facility and the DIP Liens securing same and shall not be applicable to any other debtor-in-possession credit facility, even if it contains substantially the same economic terms as this DIP Facility.

K.    **Section 552**.  In light of the subordination of their Liens and superpriority administrative claims to (i) the Carve Out, in the case of the DIP Secured Parties, and (ii) the Carve Out and the DIP Liens, in the case of the Prepetition Secured Parties, each of the DIP Secured

Parties and the Prepetition Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

L.     **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)     The DIP Secured Parties have indicated a willingness to provide postpetition secured financing via the DIP Facility to the Debtors in accordance with the DIP Loan Documents and this Final Order.

(ii)     The DIP Secured Parties, each of the Prepetition Secured Parties and the Debtors, with the assistance and counsel of their respective advisors, have acted in good faith and at arm's-length in, as applicable, negotiating, consenting to, and/or agreeing to, the DIP Facility (including the Roll Up), the Debtors' use of the DIP Collateral, the Prepetition RBL Collateral, the Prepetition Term Loan Collateral, and the Prepetition Seller Note Collateral (including, in each case, any Cash Collateral), the DIP Loan Documents, and the DIP Protections. The DIP Obligations (including all advances that are made at any time to the Debtors under the DIP Loan Documents and including the Roll Up DIP Loans) and the Debtors' use of the DIP Collateral, the Prepetition RBL Collateral, the Prepetition Term Loan Collateral, and the Prepetition Seller Note Collateral (including, in each case, any Cash Collateral) shall be deemed to have been extended and/or consented to by the DIP Secured Parties and each of the Prepetition Secured Parties, as applicable, for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express and good faith reliance upon the protections offered by section 364(e) of the Bankruptcy Code and this Final Order, and, accordingly, the DIP Liens, the DIP Superpriority Claims, and the DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and this Final Order in the event

this Final Order or any other order or any provision hereof or thereof is vacated, reversed, amended, or modified on appeal or otherwise.

M.   **Relief Essential: Best Interest**.  Absent granting the relief set forth in this Final Order, the Debtors' estates, their businesses and properties, and their ability to successfully reorganize or otherwise preserve the enterprise value of the Debtors' estates will be irreparably harmed.  Consummation of the DIP Facility and authorization of the use of Cash Collateral in accordance with this Final Order and the DIP Loan Documents are therefore in the best interests of the Debtors' estates and consistent with their fiduciary duties.

**NOW, THEREFORE,** based on the DIP Motion and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Prepetition RBL Agent, the requisite Prepetition RBL Secured Parties (on behalf of all of the Prepetition RBL Secured Parties), the Prepetition Term Loan Agent, the requisite Prepetition Term Loan Secured Parties (on behalf of all Prepetition Term Loan Secured Parties), the Prepetition Seller Note Agent, the requisite Prepetition Seller Note Secured Parties (on behalf of all the Prepetition Seller Note Secured Parties), and the DIP Agent (on behalf of all of the DIP Secured Parties), in each case, to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.   **Motion Granted**.  The DIP Motion is hereby granted in accordance with the terms and conditions set forth in this Final Order and the DIP Loan Documents.  Any objections to the entry of this Final Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.   **DIP Loan Documents and DIP Protections**.

(a)    <u>Approval of DIP Loan Documents</u>.  In addition to the authority granted in the Interim Order, the Debtors are expressly and immediately authorized to establish the DIP Facility, to execute, deliver, and continue to perform under the DIP Loan Documents, including the DIP Engagement Letter (as defined in the DIP Motion) and, with respect to the Commitment Letter Indemnity Obligations, the New RBL Facility Commitment Letter (as defined in the DIP Motion), and this Final Order, to incur the DIP Obligations (defined below) (including to convert to DIP Obligations under the DIP Loan Documents each DIP Lender's ratable share of $45,000,000 of the outstanding principal amount of the Revolving Loans (with each DIP Lender's ratable share based on the ratio of such DIP Lender's share of the DIP Revolver Facility, including the DIP LC Sub-Facility)), in accordance with, and subject to, the terms of this Final Order and the DIP Loan Documents, and to execute, deliver, and perform under all other instruments, certificates, agreements, and documents that may be required or necessary for the performance by the applicable Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens described in, and provided for, by this Final Order and the DIP Loan Documents.  The Debtors are hereby authorized to do and perform all acts and pay the principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Final Order, including all closing fees, administrative fees, commitment and arrangement fees, and reasonable and documented attorneys', financial advisors', and accountants' fees, and disbursements arising under the DIP Loan Documents and this Final Order, which amounts shall not be subject to further approval of this Court and shall be non-refundable and not subject to challenge in any respect; *provided* that the payment of the fees and expenses of the Lender Professionals (defined below) shall be subject to the provisions of Paragraph 22(b).  Upon their execution and delivery, the DIP Loan Documents shall represent the

legal, valid, and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms.  Each officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive evidence of such officer's respective authority to act in the name of and on behalf of the Debtors.

(b)    DIP Obligations.    For purposes of this Final Order, the term "**DIP Obligations**" shall mean all amounts and other obligations and liabilities owing by the respective Debtors under the DIP Credit Agreement and other DIP Loan Documents (which includes all Secured Swap Obligations and all other "Obligations," each as defined in the DIP Credit Agreement), and the Roll Up DIP Obligations) (defined below) and shall include the principal of, interest on, and fees, costs, expenses, premiums, and other charges owing in respect of, such amounts (including any reasonable and documented attorneys', accountants', financial advisors', and other fees, costs, and expenses that are chargeable or reimbursable under the DIP Loan Documents and/or this Final Order), and any obligations in respect of indemnity claims, whether contingent or otherwise.  Notwithstanding anything to the contrary herein, the relative rights and priorities of the DIP Secured Parties in respect of the DIP Collateral shall be as provided in this Final Order and the other DIP Loan Documents.

(c)    Authorization to Continue to Incur DIP Obligations and Use Cash Collateral.  To enable the Debtors to continue to operate their business and preserve and maximize the value of their estates, during the period from the entry of this Final Order through and including the Termination Declaration Date (defined below), in each case unless extended by written agreement of the DIP Agent and the Prepetition RBL Agent (and, with respect to any use of the Cash Collateral (if any) of ARD Holdings I, the written agreement of the Prepetition Term Loan Agent and, with respect to any use of the Cash Collateral (if any) of the Prepetition Seller Note

Grantors, the written agreement of the Prepetition Seller Note Agent), the Debtors are hereby authorized: (x) to use Cash Collateral; (y) to enter into new Secured Swap Agreements (as defined in the DIP Credit Agreement) and continue performing under any Secured Swap Agreements that are in effect as of the Petition Date (and all Secured Swap Obligations shall be deemed to be DIP Obligations); and (z) to borrow and obtain letters of credit under the DIP Facility; *provided* that (I) any amounts repaid under the DIP Revolver Facility may be reborrowed, subject to the terms of the DIP Loan Documents and this Final Order, and (II) any proposed use of the proceeds of DIP Loans or use of Cash Collateral shall be consistent with the terms and conditions of this Final Order and the DIP Loan Documents, including the Approved Budget (defined below) and the Budget Covenants (defined below), subject to any applicable Permitted Variance (as defined and contained in the DIP Credit Agreement).  All DIP Obligations shall be unconditionally guaranteed, on a joint and several basis, by the DIP Guarantors, as further provided in the DIP Loan Documents.

(d)    Roll Up.  Subject to Paragraph 7 of this Final Order, the Carve Out, and the entry of this Final Order, each DIP Lender's ratable share of $45,000,000 of the outstanding principal amount of the Revolving Loans (with each DIP Lender's ratable share based on the ratio of such DIP Lender's share of the DIP Revolver Facility, including the DIP LC Sub-Facility) shall immediately, automatically, and irrevocably be deemed to have been converted into Roll Up DIP Obligations and, except as otherwise provided in this Final Order and the DIP Loan Documents, shall be entitled to all the priorities, privileges, rights, and other benefits afforded to the other DIP Obligations under this Final Order and the DIP Loan Documents.  The conversion of the Roll Up DIP Obligations shall be authorized as compensation for, in consideration for, as a necessary inducement for, and on account of the agreement of the DIP Lenders to fund amounts under the

DIP Revolver Facility and not as payments under, adequate protection for, or otherwise on account of, any Prepetition RBL Obligations. The Prepetition RBL Lenders would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens and the DIP Agent and the DIP Lenders would not be willing to provide the DIP Revolver Facility or extend credit to the Debtors thereunder without the inclusion of the Roll Up within the DIP Facility. The Roll Up DIP Obligations will be required to be repaid in cash on the Maturity Date (as defined in the DIP Credit Agreement). As used herein, the term "**Roll Up DIP Obligations**" shall mean the Roll Up DIP Loans and all interest accrued and accruing thereon and all other amounts owing by the respective Debtors in respect thereof.

(e)    Budget. Attached hereto as Schedule 1 is a rolling 13-week cash flow budget (the "**Initial Approved Budget**") that reflects on a line-item basis the Debtors' (i) weekly projected cash receipts (including from non-ordinary course assets sales), (ii) weekly projected disbursements, including professional fees, debt service and any non-recurring or other disbursements, (iii) the sum of weekly unused availability under the DIP Facility plus unrestricted cash on hand (collectively, "**Aggregate Liquidity**") and (iv) the weekly outstanding principal balance of the loans made and letters of credit issued under the DIP Facility (including the principal amount of the Roll Up from and after the entry of this Final Order). Commencing on November 8, 2019 (the "**Initial Reporting Date**") and continuing on the last Friday of each four-week period occurring thereafter (*i.e.,* every four weeks) (each, a "**Subsequent Reporting Date**" and, each such Subsequent Reporting Date together with the Initial Reporting Date, a "**Reporting Date**"), the Debtors shall prepare and deliver simultaneously to the DIP Agent, the Prepetition Term Loan Agent, and the Prepetition Seller Note Agent an updated "rolling" 13-week budget (a "**Proposed Supplemental Budget**"), which shall be in form and substance reasonably satisfactory to the DIP

Agent, and which, once approved in writing by the DIP Agent shall supplement and replace the Initial Approved Budget or Supplemental Approved Budget (defined below), as applicable, then in effect (each such updated budget that has been approved in writing by each of the DIP Agent (a "**Supplemental Approved Budget**") without further notice, motion, or application to, order of, or hearing before, this Court; *provided* that the DIP Agent shall have five (5) Business Days (as defined in the DIP Credit Agreement) to approve each Proposed Supplemental Budget (any such party that fails to timely provide the Debtors written notice of any objection to such Proposed Supplemental Budget shall be deemed to have approved such Proposed Supplemental Budget); *provided, further* that unless and until the DIP Agent has approved in writing (or be deemed to have approved as provided above) such Proposed Supplemental Budget or any other proposed modification to the Initial Approved Budget or any Supplemental Approved Budget, as applicable, then in effect, the Debtors shall still be subject to and be governed by the terms of the Initial Approved Budget or Supplemental Approved Budget, as applicable, then in effect in accordance with this Final Order, and the DIP Secured Parties and the Prepetition RBL Secured Parties shall, as applicable, have no obligation to fund under any such Proposed Supplemental Budget or otherwise fund any amounts not otherwise provided for in the Initial Approved Budget or Supplemental Approved Budget or permit the use of Cash Collateral with respect thereto.  The Initial Approved Budget, as modified by all Supplemental Approved Budgets, shall constitute the "**Approved Budget**."  Notwithstanding anything to the contrary in this Final Order, the professional fees, costs, and expenses of the DIP Agent's advisors, the Prepetition RBL Agent's advisors, the Prepetition Term Loan Secured Parties' advisors, and the Prepetition Seller Note Secured Parties' advisors, respectively, shall be due, payable, and paid in accordance with the terms of this Final Order notwithstanding any budgeted amounts for such fees, costs, and expenses

set forth in the Approved Budget, and the Debtors shall not be deemed to have breached the terms

of the Approved Budget or the Budget Covenants to the extent the actual amount of such fees,

costs, and expenses exceed the applicable budgeted amounts as set forth in the Approved Budget.

(f)     Budget Covenants.    The Debtors shall only expend Cash Collateral and

other DIP Collateral proceeds in accordance with the Approved Budget (and, in the case of the

costs and expenses of the DIP Agent, the Prepetition RBL Agent, the Prepetition Term Loan

Secured Parties and the Prepetition Seller Note Secured Parties, in accordance with the DIP Loan

Documents and this Final Order without being limited by the Approved Budget), subject to the

Permitted Variances (defined below), which shall be tested on (i) the first Friday (or, if such Friday

is not a Business Day, the immediately preceding Business Day) following each Reporting Date

(each such Friday or the immediately preceding Business Day, as applicable, a "**Testing Date**")

and (ii) the third Friday (or, if such Friday is not a Business Day, the immediately preceding

Business Day) following each Reporting Date (each such Friday or the immediately preceding

Business Day, an "**Alternative Testing Date**" and, together with each Testing Date, a "**Variance

Testing Date**") (in each case, testing as of the most recent Variance Testing Date for the

immediately preceding four-week period then ended (each such period, a "**Testing Period**," and

each such report, a "**Variance Report**")).   On or before 5:00 p.m. (prevailing Eastern Time) on

each Variance Testing Date, the Debtors shall prepare and deliver simultaneously to the DIP

Agent, and counsel to the Prepetition RBL Agent, the Prepetition Term Loan Secured Parties, the

Prepetition Seller Note Secured Parties and counsel to any Committee a Variance Report, in form

and substance reasonably satisfactory to the DIP Agent, setting forth on a line-item basis (i) the

actual cash receipts, expenditures, disbursements, and outstanding revolving loan balance

(separating out the amount of the Roll Up) of the Debtors for the applicable Testing Period and

the Aggregate Liquidity and outstanding letter of credit exposure as of the end of the applicable Testing Period, and (ii) the variance in dollar amounts and percentage (whether positive or negative) of the actual cash receipts, expenditures, disbursements, and outstanding revolving loan balance for the applicable Testing Period, and the actual Aggregate Liquidity and outstanding letter of credit exposure as of the end of the applicable Testing Period, from those budgeted amounts for, or as applicable, as of the end of, the corresponding period reflected in the Approved Budget. As of any Variance Testing Date, for the Testing Period ending on such Variance Testing Date, the Debtors shall not allow the aggregate disbursements made by the Debtors during such Testing Period (excluding disbursements in respect of professional fees incurred in the Cases by the Debtors and any Committee, debt service and all royalty and working interest obligations during such Testing Period) to be greater than 115% of the aggregate disbursements for the Debtors set forth in the Approved Budget for such Testing Period, *provided* that the Debtors may carry forward budgeted but unused disbursements in such Testing Period set forth in the Budget (a "**Permitted Variance**").  Nothing in the Approved Budget or the covenants contained in this Paragraph 2(f) or the DIP Credit Agreement shall limit the Debtors' expenditures to (i) the Professional Persons (defined below) retained in these Cases or (ii) the Clerk of Court and Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a).  Additional variances, if any, from any Approved Budget, and any proposed changes to any Approved Budget, shall be subject to the written consent of the DIP Agent and the Prepetition RBL Agent (such consent not to be unreasonably conditioned, delayed, or withheld).  In addition to and without limiting the foregoing, on or before 5:00 p.m. (prevailing Eastern Time) on each Variance Testing Date, the Debtors shall deliver a report to the DIP Agent, the Prepetition RBL Agent, the Prepetition Term Loan Agent, the Prepetition Seller Note Agent, the United States Trustee, and counsel to any Committee, showing estimated accrued

and unpaid professional fees and expenses for the Applicable Testing Period which, if allowed, would be Allowed Professional Fees (defined below) benefitting from the Carve Out. The foregoing budget-related covenants are collectively referred to herein as the "**Budget Covenants**."

(g)    <u>Interest, Fees, Costs, Indemnities, and Expenses</u>.  The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Final Order and the DIP Loan Documents, in each case without further notice, motion, or application to, order of, or hearing before, this Court.  The Debtors shall pay all fees, costs, indemnities, expenses (including reasonable and documented out-of-pocket legal and other professional fees and expenses of the DIP Agent and the Commitment Letter Indemnity Obligations), and other charges payable under the terms of the DIP Loan Documents as and when due thereunder.  All such fees, costs, indemnities, expenses, and disbursements, whether incurred, paid or required to be paid prepetition or postpetition and whether or not budgeted in the Approved Budget, are hereby affirmed, ratified, authorized, and payable (and any funds held by the DIP Agent and/or its professionals as of the Petition Date for payment of such fees, costs, indemnities, expenses, and disbursements may be applied for payment) as contemplated in this Final Order and the DIP Loan Documents, and, subject to the provisions of Paragraph 22(b) with respect to the fees and expenses of the Lender Professionals, shall be non-refundable and not subject to challenge in any respect and shall be payable without need to obtain further Court approval.

(h)    <u>Use of DIP Facility and Proceeds of DIP Collateral</u>.  The DIP Borrower shall apply the proceeds of all DIP Collateral solely in accordance with this Final Order, the DIP Loan Documents, and the Approved Budget (subject to any applicable Permitted Variance). Without limiting the foregoing, the Debtors shall not be permitted to make any payments (from

the DIP Collateral, the proceeds of DIP Loans, or otherwise) on account of any prepetition debt or

obligation prior to the effective date of a confirmed chapter 11 plan or plans with respect to any of

the Debtors, except: (i) as set forth in the Interim Order and this Final Order; (ii) as provided in

the orders entered by the Court in the Cases (other than the Interim Order and this Final Order)

pursuant to motions and applications filed by the Debtors within ten (10) days after the Petition

Date (the "**First Day Orders**"), which First Day Orders shall be in form and substance reasonably

acceptable to the DIP Agent and consistent with the RSA (as defined in the DIP Motion); (iii) as

expressly provided in other motions, orders, and requests for relief; or (iv) as otherwise expressly

provided in the DIP Credit Agreement.

(i)     Conditions Precedent.  The DIP Secured Parties have no obligation to

extend credit under the DIP Facility unless and until all conditions precedent to the extension of

credit under the DIP Loan Documents and this Final Order have been satisfied in full or waived in

writing by the DIP Secured Parties in accordance with the DIP Loan Documents.

(j)     DIP Liens.  Subject to the Carve Out, as security for the DIP Obligations

(including all Secured Swap Obligations), effective as of the Petition Date, the following security

interests and Liens, which shall immediately and without any further action by any Person be valid,

binding, permanent, perfected, continuing, enforceable, and non-avoidable upon the entry of this

Final Order, are hereby granted by the Debtors to the DIP Agent, for itself and the other DIP

Secured Parties (all such security interests and Liens granted to the DIP Agent for the benefit of

all the DIP Secured Parties pursuant to this Final Order and the DIP Loan Documents, the "**DIP**

**Liens**"), on all property of the Debtors, (including ARD Holdings I and the Prepetition Seller Note

Grantors) now existing or hereinafter acquired, including all cash and cash equivalents (whether

maintained with the DIP Agent or otherwise), and any investment in such cash or cash equivalents,

money, inventory, goods, accounts receivable (including those owed to the Debtors generated by intercompany transactions), other rights to payment, intercompany loans and other investments, securities and other investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, permits, franchise rights, capital stock and other equity interests of domestic and foreign subsidiaries and in other entities, tax and other refunds, insurance proceeds, claims (including commercial tort claims), causes of action (including the proceeds of Avoidance Actions), and products, offspring, profits, and proceeds relating thereto, rights under section 549 of the Bankruptcy Code (whether received by judgment, settlement, or otherwise), all other Collateral (as defined in the DIP Loan Documents), and all other "property of the estate" (as defined in section 541 of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements, and cash and non-cash proceeds of all of the foregoing, in each case wherever located; *provided* that the Avoidance Actions themselves shall not be DIP Collateral; *provided*, *further*, that the DIP Collateral shall not include any Excluded Assets (as such term is defined in the DIP Credit Agreement; all of the foregoing collateral collectively, the "**DIP Collateral**"):

> (A)      pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable first priority Lien on and security interest in all DIP Collateral that is not otherwise subject to a valid, perfected, and enforceable security interest or Lien in existence as of the Petition Date or a valid Lien perfected (but not granted) after the Petition Date (to the extent that such perfection in respect of a prepetition claim is expressly permitted under the Bankruptcy Code), including, the proceeds of Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code

and any other avoidance or similar action under the Bankruptcy Code or similar state or municipal law (collectively, the "Avoidance Actions," which for avoidance of doubt, excludes Debtors' claims and causes of action under section 549 of the Bankruptcy Code or similar state or municipal law and the proceeds of each of the foregoing), whether received by judgment, settlement, or otherwise;

(B)    pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable Lien on and security interest in all DIP Collateral that is subject solely to the Prepetition Prior Liens, which DIP Lien shall be junior only to such Prepetition Prior Liens and the Carve Out; and

(C)    subject to the Carve Out, pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable first priority, senior priming Lien on and security interest in all other DIP Collateral (including Cash Collateral), which DIP Lien (x) shall be senior to the Prepetition RBL Adequate Protection Liens  and senior and priming to (A) the Prepetition RBL Liens, the Prepetition Term Loan Liens, and the Prepetition Seller Note Liens and (B) any Liens that are junior to the Prepetition RBL Liens or the Prepetition RBL Adequate Protection Liens, after giving effect to any intercreditor or subordination agreements (the Liens referenced in clauses (A) and (B), collectively, the "**Primed Liens**") and shall be junior only to the Prepetition Prior Liens and the Carve Out.

(k)    DIP Lien Priority.  Notwithstanding anything to the contrary contained in this Final Order or the DIP Loan Documents, for the avoidance of doubt, the DIP Liens granted to the DIP Agent for the benefit of the DIP Secured Parties shall in each and every case be first priority senior Liens that (i) are subject to and subordinate to only to the Prepetition Prior Liens, and to the extent provided in this Final Order and the DIP Loan Documents, shall also be subject to the Carve Out, and (ii) except as provided in the immediately preceding sub-clause (i), are senior to all prepetition and postpetition Liens or other interests of any kind of any other person or entity (including the Primed Liens and the Prepetition RBL Adequate Protection Liens), whether created voluntarily or involuntarily (including by order of a court).

(l)    Enforceable Obligations.  The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the Debtors, which DIP Obligations shall be enforceable against the Debtors, their estates, and any successors thereto (including any trustee or other estate representative in any Successor Case (defined below)), and their creditors and other

parties-in-interest, in accordance with their terms.  No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Loan Documents, or this Final Order shall be stayed, restrained, voidable, avoidable, disallowable, or recoverable under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, 547, 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, surcharge, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, except, with respect to the Adequate Protection Liens (defined below), during the Challenge Period (defined below).

(m)     Superpriority Administrative Claim Status.  In addition to the DIP Liens granted herein, effective immediately upon entry of this Final Order, all of the DIP Obligations shall constitute allowed superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve Out in accordance with this Final Order, over all administrative expense claims, adequate protection and other diminution claims (including the Prepetition RBL Adequate Protection Superpriority Claims (defined below)), priority and other unsecured claims, and all other claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, and 1114 or any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment (the "**DIP**

**Superpriority Claims**"). The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof, including Avoidance Actions and the proceeds thereof.  Other than as expressly provided in the DIP Credit Agreement and/or this Final Order with respect to the Carve Out, no costs or expenses of administration, including professional fees allowed and payable under sections 328, 330, or 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Superpriority Claims or the DIP Obligations, or with any other claims of the DIP Secured Parties arising under the DIP Loan Documents and/or this Final Order.

(n)    <u>Priority of DIP Liens and DIP Superpriority Claims</u>.  The DIP Liens and the DIP Superpriority Claims: (i) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (ii) shall not be subordinate to, or *pari passu* with, (A) any Lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (B) any Liens or claims of any Debtor or any direct or indirect subsidiary thereof against any Debtor or any of such Debtor's property, (iii) shall be valid and enforceable against any trustee or any other estate representative elected or appointed in the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "**Successor Case**"), and/or upon the dismissal of any of the Cases, and (iv) notwithstanding anything to the contrary in

any First Day Order of this Court in any of the Cases, shall be senior to any administrative claims arising under any such First Day Order.

3.    **Adequate Protection for Prepetition RBL Secured Parties**.  In consideration for the use of the Prepetition RBL Collateral (including Cash Collateral) and the priming of the Prepetition RBL Liens, the Prepetition RBL Agent, for the benefit of the Prepetition RBL Secured Parties, shall receive the following adequate protection (collectively, the "**Prepetition RBL Adequate Protection**"):

(a)    <u>Prepetition RBL Adequate Protection Liens</u>.  Subject to the Carve Out, to the extent there is an aggregate diminution in value of the interests of the Prepetition RBL Secured Parties in the Prepetition RBL Collateral (including Cash Collateral) from and after the Petition Date, resulting from the use, sale, or lease by the Debtors of the applicable Prepetition RBL Collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the subordination of the Prepetition RBL Liens thereto and to the Carve Out, the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code, and/or any other reason for which adequate protection may be granted under the Bankruptcy Code ("**Diminution in Prepetition RBL Collateral Value**"), the Prepetition RBL Agent, for the benefit of all the Prepetition RBL Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement Liens upon all of the DIP Collateral, including the proceeds of Avoidance Actions (such adequate protection replacement Liens, the "**Prepetition RBL Adequate Protection Liens**"), which Prepetition RBL Adequate Protection Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Prepetition Prior Liens,  and the Carve Out.

(b)    <u>Prepetition RBL Adequate Protection Superpriority Claims</u>.  Subject and subordinate to the Carve Out, to the extent of Diminution in Prepetition RBL Collateral Value, the Prepetition RBL Secured Parties are hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "**Prepetition RBL Adequate Protection Superpriority Claims**"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and priority and other unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, 1114, or any other provision of the Bankruptcy Code or otherwise, junior only to the DIP Superpriority Claims and the Carve Out, and payable from all prepetition and postpetition property of the Debtors and all proceeds thereof (including Avoidance Actions and the proceeds thereof); *provided* that the Prepetition RBL Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the Prepetition RBL Adequate Protection Superpriority Claims unless and until all DIP Obligations (including the Roll Up DIP Obligations) have been Paid in Full.  Subject to the relative priorities set forth above, the Prepetition RBL Adequate Protection Superpriority Claims against each Debtor shall be allowed and enforceable against each Debtor and its estate on a joint and several basis.  For purposes of this Final Order, the terms "**Paid in Full**," "**Repaid in Full**," "**Repay in Full**," "**Pay in Full**," and "**Payment in Full**" shall mean, with respect to any referenced DIP Obligations and/or Prepetition RBL Obligations, (i) the indefeasible payment in full in cash of such obligations, (ii) the termination or cash collateralization, in accordance with the DIP Loan Documents or Prepetition RBL Loan Documents, as applicable, of all undrawn

letters of credit outstanding thereunder, and (iii) the termination of all credit commitments under the DIP Loan Documents and/or Prepetition RBL Loan Documents, as applicable.

(c)    <u>Priority of Prepetition RBL Adequate Protection Liens and Prepetition RBL Adequate Protection Superpriority Claims</u>.  The Prepetition RBL Adequate Protection Liens and the Prepetition RBL Adequate Protection Superpriority Claim (i) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or  section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (ii) shall not be subordinate to, or *pari passu* with, (A) any Lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (B) any Liens or claims of any Debtor or any direct or indirect subsidiary thereof against any Debtor or any of such Debtor's property, (iii) shall be valid, binding, perfected, and enforceable against any trustee or any other estate representative elected or appointed in the Cases or any Successor Cases, and/or upon the dismissal of any of the Cases, and (iv) notwithstanding anything to the contrary in any First Day Order of this Court in any of the Cases, shall be senior to any administrative claims arising under any such First Day Order.

(d)    <u>Payment of Interest to and Professional Fees and Expenses of Prepetition RBL Agent</u>.  As further adequate protection, and without limiting any rights or defenses of the Prepetition RBL Agent and the other Prepetition RBL Secured Parties under section 506(b) of the Bankruptcy Code, which rights and defenses are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition RBL Secured Parties to the entry of this Final Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall pay or reimburse in cash (i) to the Prepetition RBL Secured Parties, interest at the non-Default Rate (as defined in the Prepetition RBL Credit Agreement) under the Prepetition RBL Credit

Agreement, payable on the last Business Day of each month on the principal amount outstanding

thereunder (as such principal amount is reduced by the Roll Up DIP Loans upon entry of this Final

Order) beginning with November 29, 2019, and (ii) to the Prepetition RBL Agent, any and all fees,

costs, expenses, and charges (including the reasonable and documented fees, costs, and expenses

of one primary counsel, one local counsel, and the financial advisor for the Prepetition RBL Agent)

to the extent, and at the times, payable under the Prepetition RBL Loan Documents, including any

unpaid fees, costs, and expenses accrued prior to or after the Petition Date within five (5) Business

Days after the presentment of any such invoices to the Debtors, but subject to Paragraph 22(b)

with respect to any postpetition reimbursement for professional fees.  During the Cases, Default

Rate interest shall continue to accrue *provided* that the Prepetition RBL Secured Parties have

agreed to waive the payment of such interest under the Plan (as defined in the RSA) so long as

such Plan becomes effective in accordance with the terms of the RSA.

(e)     The Debtors shall deliver to the Prepetition RBL Agent all information,

reports, documents, and other material that the Debtors provide to the DIP Secured Parties pursuant

to the DIP Loan Documents.

(f)     Notwithstanding the Payment in Full of the DIP Obligations and the

termination of the DIP Loan Documents, the covenants set forth in the DIP Loan Documents and

any order of this Court relating thereto shall continue in full force and effect for the benefit of the

Prepetition RBL Agent and the Prepetition RBL Secured Parties, and may be enforced by the

Prepetition RBL Agent.  Unless otherwise expressly set forth herein or in the DIP Loan

Documents, any consent or approval rights or similar rights granted or referenced in this Final

Order or in the DIP Loan Documents in favor of any or all of the DIP Agent, the other DIP Secured

Parties, the Prepetition RBL Agent, and the other Prepetition RBL Secured Parties may be exercised (or not exercised) in the sole discretion of such party.

(g)     Consent to Priming and Adequate Protection. The Prepetition RBL Agent, and the other Prepetition RBL Secured Parties that have consented, consents to the Prepetition RBL Adequate Protection and the priming provided for herein; *provided*, *further* that such consent of the Prepetition RBL Agent and the other Prepetition RBL Secured Parties to the priming of the Prepetition RBL Liens and the use of Cash Collateral is expressly conditioned upon the entry of this Final Order, and such consent shall not be deemed to extend to any other Cash Collateral usage or other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Loan Documents; *provided*, *further*, that such consent shall be of no force and effect in the event  this Final Order is not entered or is entered and subsequently reversed, modified, stayed, or amended (unless such reversal, modification, stay, or amendment is acceptable to the Prepetition RBL Agent) or the DIP Loan Documents and DIP Facility as set forth herein are not approved.

(h)     Right to Seek Additional Adequate Protection. Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, this Court finds that the adequate protection provided herein is reasonable to protect the interests of the Prepetition RBL Secured Parties. However, the Prepetition RBL Agent, on behalf of the Prepetition RBL Secured Parties, may request Court approval for additional or alternative adequate protection, without prejudice to any objection of the Debtors or any other party in interest to the grant of any additional or alternative adequate protection; *provided* that any such additional or alternative adequate protection shall at all times be subordinate and junior to the Carve Out and claims and Liens of the DIP Secured Parties granted under this Final Order and the DIP Loan

Documents; *provided*, *further*, that nothing in this Paragraph shall authorize the Prepetition RBL Agent or Prepetition RBL Secured Parties to deny the Debtors access to Cash Collateral or DIP Loans in accordance with the Approved Budget, subject to any Permitted Variance, pursuant to the terms of this Final Order during the pendency of such request for additional or alternative adequate protection.  The consent of the Prepetition RBL Secured Parties to the priming of the Prepetition RBL Liens by the DIP Liens and the Debtors' use of Cash Collateral on the terms set forth herein does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition RBL Secured Parties that their respective interests in the Prepetition RBL Collateral are adequately protected pursuant to this Final Order or otherwise.

4.    **Adequate Protection for Prepetition Term Loan Secured Parties**.    In consideration for the use of the Prepetition Term Loan Collateral (including Cash Collateral) and the priming of the Prepetition Term Loans, the Prepetition Term Loan Agent, for the benefit of the Prepetition Term Loan Secured Parties, shall receive, until the earlier of the (i) occurrence of a Termination Event (defined below) and (ii) date of termination of the RSA as to the Prepetition Term Loan Lenders, subject to the Carve Out, the following adequate protection (collectively, the "**Prepetition Term Loan Adequate Protection**"):

(a)    Prepetition Term Loan Adequate Protection Liens.  Subject to the Carve Out and the other provisions of this Final Order, to the extent there is an aggregate diminution in value of the interests of the Prepetition Term Loan Secured Parties in the Prepetition Term Loan Collateral (including any Cash Collateral) from and after the Petition Date resulting from the use, sale, or lease by the Debtors of the applicable Prepetition Term Loan Collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the granting of the Prepetition RBL Adequate Protection Liens, the subordination of the Prepetition

44

Term Loan Liens thereto and to the Carve Out, the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code, and/or any other reason for which adequate protection may be granted under the Bankruptcy Code ("**Diminution in Prepetition Term Loan Collateral Value**"), the Prepetition Term Loan Agent, for the benefit of all the Prepetition Term Loan Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement Liens upon all of the DIP Collateral constituting assets of ARD Holdings I, including the proceeds of Avoidance Actions of ARD Holdings I (such adequate protection replacement Liens, the "**Prepetition Term Loan Adequate Protection Liens**"), which Prepetition Term Loan Adequate Protection Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Prepetition Prior Liens, the Prepetition RBL Adequate Protection Liens, and the Carve Out.

(b)     <u>Prepetition Term Loan Adequate Protection Superpriority Claims</u>.  Subject to the Carve Out and the other provisions of this Final Order, to the extent of Diminution in Prepetition Term Loan Collateral Value, the Prepetition Term Loan Secured Parties are hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "**Prepetition Term Loan Adequate Protection Superpriority Claims**"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and priority and other unsecured claims against ARD Holdings I or its estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 , 1113, 1114, or any other provision of the Bankruptcy Code or otherwise, junior only to the DIP Superpriority Claims, the Prepetition RBL Adequate Protection Superpriority Claims, and the Carve Out to the extent provided herein and in the DIP

Loan Documents and the Prepetition RBL Loan Documents, and payable from all prepetition and postpetition property of ARD Holdings I and all proceeds thereof (including Avoidance Actions of ARD Holdings I and the proceeds thereof). Notwithstanding the foregoing, each of the Prepetition Term Loan Secured Parties (i) agrees that, solely under the Plan (as defined in the RSA), any Prepetition Term Loan Adequate Protection Superpriority Claim shall not receive any recovery or distribution and there shall be no Prepetition Term Loan Adequate Protection Liens solely for purposes of the Plan; and (ii) hereby consents to such treatment of its Prepetition Term Loan Adequate Protection Superpriority Claims and Prepetition Term Loan Adequate Protection Liens solely under the Plan.

(c)    <u>Professional Fees of Prepetition Term Loan Agent</u>.  As adequate protection, and without limiting any rights or defenses, of the Prepetition Term Loan Agent and the other Prepetition Term Loan Secured Parties under section 506(b) of the Bankruptcy Code, which rights and defenses are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition Term Loan Secured Parties to the entry of this Final Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall pay or reimburse in cash the Prepetition Term Loan Agent and the Prepetition Term Loan Secured Parties for any and all reasonable out-of-pocket third party fees, costs, expenses, and charges (including the reasonable and documented fees, costs, and expenses of Kirkland & Ellis LLP, Vinson & Elkins LLP, and one local counsel for each of the Prepetition Term Loan Lenders) to the extent, and at the times, payable under the RSA, including any unpaid fees, costs, and expenses accrued prior to or after the Petition Date, subject to Paragraph 22(b) hereof.

(d)    <u>Consent to Priming and Adequate Protection</u>.  The Prepetition Term Loan Agent, on behalf of the Prepetition Term Loan Secured Parties, consents to the Prepetition Term

Loan Adequate Protection and the priming provided for herein; *provided* that such consent of the Prepetition Term Loan Agent to the priming of the Prepetition Term Loans and the use of any Cash Collateral is expressly conditioned upon the entry of this Final Order and the receipt of Prepetition Term Loan Adequate Protection.

(e)    The Debtors shall deliver to the Prepetition Term Loan Agent all information, reports, documents, and other material that the Debtors provide to the DIP Secured Parties pursuant to the DIP Loan Documents.

5.    **Adequate Protection for Prepetition Seller Note Secured Parties**. In consideration for the use of the Prepetition Seller Note Collateral (including Cash Collateral) and the priming of the Prepetition Seller Notes, the Prepetition Seller Note Secured Parties, shall receive, until the earlier of the (i) occurrence of a Termination Event and (ii) date of termination of the RSA as to the Prepetition Seller Noteholders, subject to the Carve Out, the following adequate protection (collectively, the "**Prepetition Seller Note Adequate Protection**" and, together with the Prepetition RBL Adequate Protection and the Prepetition Term Loan Adequate Protection, the "**Prepetition Adequate Protection**"):

(a)    <u>Prepetition Seller Note Adequate Protection Liens</u>.  Subject to the Carve Out, to the extent there is a diminution in value of the interests of the Prepetition Seller Note Secured Parties in the Prepetition Seller Note Collateral (including Cash Collateral) from and after the Petition Date resulting from the use, sale, or lease by the Debtors of the applicable Prepetition Seller Note Collateral (including any Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the granting of the Prepetition RBL Adequate Protection, the granting of the Prepetition Term Loan Adequate Protection, the subordination of the Prepetition Seller Note Liens thereto and to the Carve Out, the imposition or enforcement of the

automatic stay of section 362(a) of the Bankruptcy Code and/or any other reason for which adequate protection may be granted under the Bankruptcy Code ("**Diminution in Prepetition Seller Note Collateral Value**"), the Prepetition Seller Note Secured Parties are hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement Liens upon all of the DIP Collateral of the Prepetition Seller Note Grantors, including the proceeds of Avoidance Actions of the Prepetition Seller Note Grantors (such adequate protection replacement Liens, the "**Prepetition Seller Note Adequate Protection Liens**," and, together with the Prepetition RBL Adequate Protection Liens and the Prepetition Term Loan Adequate Protection Liens, the "**Adequate Protection Liens**"), which Prepetition Seller Note Adequate Protection Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Prepetition Prior Liens, the Prepetition RBL Adequate Protection Liens, and the Carve Out.

(b)      Prepetition Seller Note Adequate Protection Superpriority Claims.  Subject to the Carve Out, to the extent of Diminution in Prepetition Seller Note Collateral Value, the Prepetition Seller Note Secured Parties are hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "**Prepetition Seller Note Adequate Protection Superpriority Claims**"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and priority and other unsecured claims against the Prepetition Seller Note Grantors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 , 1113, 1114, or any other provision of the Bankruptcy Code or otherwise, junior only to the DIP Superpriority Claims, the Prepetition RBL Adequate Protection

Superpriority Claims, and the Carve Out to the extent provided herein and in the DIP Loan Documents and the Prepetition RBL Loan Documents, and payable from all prepetition and postpetition property of the Prepetition Seller Note Grantors and all proceeds thereof (including Avoidance Actions of the Prepetition Seller Note Grantors and the proceeds thereof). Notwithstanding the foregoing, each of the Prepetition Seller Note Secured Parties (i) agrees that, solely under the Plan, any Prepetition Seller Note Adequate Protection Superpriority Claim shall not receive any recovery or distribution and there shall be no Prepetition Seller Note Adequate Protection Liens solely for purposes of the Plan; and (ii) hereby consents to such treatment of its Prepetition Seller Note Adequate Protection Superpriority Claims and Prepetition Seller Note Adequate Protection Liens solely under the Plan.

(c)    _Professional Fees of Prepetition Seller Note Secured Parties_.  As adequate protection, and without limiting any rights or defenses, of the Prepetition Seller Secured Parties under section 506(b) of the Bankruptcy Code, which rights and defenses are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition Seller Note Secured Parties to the entry of this Final Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall pay or reimburse in cash the Prepetition Seller Note Agent and the Prepetition Seller Note Secured Parties for any and all reasonable out-of-pocket third party fees, costs, expenses, and charges (including the reasonable and documented fees, costs, and expenses of Kirkland & Ellis LLP, Baker Botts L.L.P, and one local counsel for each of the Prepetition Seller Noteholders) to the extent, and at the times, payable under the RSA, including any unpaid fees, costs, and expenses accrued prior to or after the Petition Date, subject to Paragraph 22(b) hereof with respect to the reimbursement of professional fees.

(d)      <u>Consent to Priming and Adequate Protection</u>.   The Prepetition Seller Noteholders consent to the Prepetition Seller Note Adequate Protection and the priming provided for herein; *provided* that such consent of the Prepetition Seller Noteholders to the priming of the Prepetition Seller Notes and the use of Cash Collateral is expressly conditioned upon the entry of this Final Order.

(e)      The Debtors shall deliver to the Prepetition Seller Note Secured Parties all information, reports, documents, and other material that the Debtors provide to the DIP Secured Parties pursuant to the DIP Loan Documents.

6.      **Automatic Postpetition Lien Perfection**.  This Final Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, security agreement, pledge agreement, control agreement, or other instrument or document that may otherwise be required under the law of any jurisdiction, obtaining "control" (as defined in any applicable Uniform Commercial Code or other law) over any DIP Collateral (and the DIP Agent and, after Payment in Full of the DIP Facility, the Prepetition RBL Agent shall be deemed, without any further action, to have control over all the Debtors' deposit accounts, securities accounts, and commodities accounts within the meaning of such Uniform Commercial Code and other law), or (b) taking any other action to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted herein.  Notwithstanding the foregoing, each of the DIP Agent and each holder of Adequate Protection Liens (in the latter case, solely with respect to such Adequate Protection Liens) may, each in their sole discretion, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of Liens, and other similar

documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been entered into, filed, or recorded as of the Petition Date.  The applicable Debtors shall execute and deliver to the DIP Agent and/or each holder of Adequate Protection Liens, as applicable, all such financing statements, mortgages, notices, and other documents as such parties may reasonably request to evidence and confirm the contemplated validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens, as applicable, granted pursuant hereto.  Without limiting the foregoing, each of the DIP Agent and each holder of Adequate Protection Liens may, in its discretion, file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized and hereby is directed to file or record such copy of this Final Order.  Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or other monetary obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Secured Parties in accordance with the terms of the DIP Loan Documents and this Final Order or in favor of the Prepetition Secured Parties in accordance with this Final Order.  To the extent that the Prepetition RBL Agent, any Prepetition

Term Loan Secured Party or any Prepetition Seller Note Secured Party is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, financing statement, or account control agreements, listed as loss payee or additional insured under any of the Debtors' insurance policies, or is the secured party under any of the Prepetition RBL Loan Documents, the Prepetition Term Loan Documents or the Prepetition Seller Note Documents, the DIP Agent shall also be deemed to be the secured party under such account control agreements, loss payee or additional insured under the Debtors' insurance policies, and the secured party under each such Prepetition RBL Loan Document, shall have all rights and powers attendant to that position (including rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Secured Parties in accordance with the DIP Loan Documents and second, subsequent to Payment in Full of all DIP Obligations, for the benefit of the Prepetition RBL Secured Parties, *provided* that nothing in this Paragraph constitutes a limitation on any obligation to pay a stamp or similar tax pursuant to Section 1146(a) of the Bankruptcy Code.   The Prepetition RBL Agent, the Prepetition Term Loan Agent and the Prepetition Seller Note Secured Parties, as applicable, shall serve as agent for the DIP Agent for purposes of perfecting the DIP Agent's Liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Final Order, is of a type such that perfection of a Lien therein may be accomplished only by possession or control by a secured party.

      7.     **<u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>**. The Debtors' Stipulations were binding upon the Debtors and their estates in all circumstances upon entry of the Interim Order.  The Debtors' Stipulations shall be binding upon each party in interest (other than the Debtors), including the Committee and any chapter 11 trustee (or if the Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period

(defined below), the chapter 7 trustee in such Successor Case), except to the extent and only to the extent such party in interest with standing *first,* commences by the earlier of (x) the date a confirmation order is entered in the Debtors' chapter 11 cases, (y) in the case of such adversary proceeding or other contested matter filed by a party in interest with required standing other than the Committee (if any) no later than seventy-five (75) days from the date of entry of the Interim Order, or (z) in the case of an adversary proceeding or other contested matter filed by the Committee (if any), no later than sixty (60) days after the appointment of the Committee (if any) (such time period established by the earlier of clauses (x), (y) or (z), as the same may be extended in accordance with this Paragraph 7, shall be referred to as the "**Challenge Period**") and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a Challenge, such Challenge is fully and finally adjudicated, shall be referred to as the "**Challenge Period Termination Date**") (A) a contested matter or adversary proceeding challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations, or (B) a contested matter or adversary proceeding against any or all of the Prepetition RBL Secured Parties, Prepetition Term Loan Secured Parties, or Prepetition Seller Note Secured Parties, as applicable, in connection with or related to the Prepetition RBL Obligations, Prepetition Term Loan Obligations, or Prepetition Seller Note Obligations, as applicable, or the actions or inactions of any of the Prepetition RBL Secured Parties, Prepetition Term Loan Secured Parties, or Prepetition Seller Note Secured Parties, as applicable, arising out of or related to the Prepetition RBL Obligations, the Prepetition RBL Loan Documents, the Prepetition Term Loan Obligations, the Prepetition Term Loan Documents, the Prepetition Seller Note Obligations, or the Prepetition Seller Note Documents, as applicable,

including any claim against any or all of the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, or the Prepetition Seller Note Secured Parties, as applicable in the nature of a "lender liability" cause of action, setoff, counterclaim, or defense to the Prepetition RBL Obligations, the Prepetition Term Loan Obligations, or the Prepetition Seller Note Obligations, as applicable (including those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, or the Prepetition Seller Note Secured Parties, as applicable) (clauses (A) and (B) collectively, the "**Challenges**" and, each individually, a "**Challenge**"), and *second*, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action (any such Challenge timely brought for which such a final and non-appealable order is so obtained, a "**Successful Challenge**").  If a chapter 7 trustee or a chapter 11 trustee is appointed or elected during the Challenge Period, then the Challenge Period Termination Date with respect to such trustee only shall be the later of (i) the last day of the Challenge Period and (ii) the date that is twenty (20) days after the date on which such trustee is appointed or elected.  Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in these Cases and any Successor Cases (and after the dismissal of these Cases or any Successor Cases), (i) all payments made to or for the benefit of the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, or the Prepetition Seller Note Secured Parties, as applicable pursuant to, or otherwise authorized by, this Final Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery, or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and

barred, (iii) all of the Prepetition RBL Obligations, the Prepetition Term Loan Obligations, and the Prepetition Seller Note Obligations, as applicable, shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code (which claims and Liens shall have been deemed satisfied to the extent the Prepetition RBL Obligations are converted into Roll Up DIP Obligations as provided herein), and (iv) the Debtors' RBL Stipulations, the Debtors' Term Loan Stipulations, and the Debtors' Seller Note Stipulations, as applicable, including the release provisions therein, shall be binding on all parties in interest in these Cases or any Successor Cases, including any Committee or chapter 11 or chapter 7 trustee.  Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtors' RBL Stipulations, the Debtors' Term Loan Stipulations, and the Debtors' Seller Note Stipulations, as applicable, and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party in interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' RBL Stipulations, the Debtors' Term Loan Stipulations, and the Debtors' Seller Note Stipulations, as applicable, or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such Challenge and such Challenge becomes a Successful Challenge.  The Challenge Period may be extended (x) with respect to a Challenge related to the Prepetition RBL Obligations or Prepetition RBL Liens, only with the written consent of the Prepetition RBL Agent in its sole discretion, (y) with respect to a Challenge related to the Prepetition Term Loan Obligations or the Prepetition Term Loan Liens, only with the written consent of the Prepetition Term Loan Agent in its sole discretion, and (z) with respect to a Challenge related to the Prepetition Seller Note Obligations or Prepetition Seller Note Liens, only with the written consent of the Prepetition Seller Noteholders in their sole discretion or, in each case, pursuant to a Court order for good cause

shown.  Notwithstanding any provision to the contrary herein, nothing in this Final Order shall be construed to grant standing on or authority to any party in interest, including any Committee, to pursue or bring any cause of action, including any Challenge, on behalf of the Debtors or their Debtors' estates.  The failure of any party in interest, including any Committee, to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this Paragraph 7 or to require or permit an extension of the Challenge Period Termination Date.  For the avoidance of doubt, as to the Debtors, upon entry of this Final Order, all Challenges, and any right to assert any Challenge, are hereby irrevocably waived and relinquished as of the Petition Date, and the Debtors' Stipulations shall be binding in all respects on the Debtors irrespective of the filing of any Challenge.

8.    **Carve Out**.

(a)    Carve Out.  As used in this Final Order, the "Carve Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Professional Persons**") at any time before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (defined below), whether

allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,750,000 incurred after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, lead counsel to the Prepetition RBL Agent, lead counsel to the Prepetition Term Loan Secured Parties, lead counsel to the Prepetition Seller Note Secured Parties, the United States Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Credit Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    _Carve Out Reserves_.  On the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors (the "**Termination Declaration Date**"), the Carve Out Trigger Notice shall (i) be deemed a draw request and notice of borrowing by the Debtors under the DIP Credit Agreement, in an amount equal to (a) the maximum amount provided for in Paragraph 8(a)(i) and 8(a)(ii) above; plus (b) the then unpaid amounts (including the good-faith estimate Professional Fees accrued and not yet invoiced) of the Allowed Professional Fees (any such amounts actually advanced shall constitute DIP Loans), as provided for in Paragraph 8(a)(iii) of the Carve Out and (ii) also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the amount described in this Paragraph 8(b).  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the

"**Pre-Carve Out Trigger Notice Reserve**") prior to any and all other claims to the fullest extent allowable under the Bankruptcy Code and applicable non-bankruptcy law.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed a draw request by the Debtors under the DIP Credit Agreement, in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Loans).  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to any and all other claims.  On the first business day after the DIP Agent provides notice of a Carve Out Trigger Notice to the DIP Lenders (which notice shall be delivered to the DIP Lenders contemporaneously with delivery to the Debtors), notwithstanding anything in the DIP Credit Agreement to the contrary, including with respect to the existence of a Default (as defined in the DIP Credit Agreement) or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for DIP Loans under the DIP Credit Agreement, any termination of the Commitments (as defined the DIP Credit Agreement) (the "**DIP Loan Commitments**") following an Event of Default, or the occurrence of the Maturity Date (as defined in the DIP Credit Agreement), each DIP Lender (on a *pro rata* basis based on the DIP Lenders' then-outstanding Commitment) shall make available to the DIP Agent such DIP Lender's *pro rata* share with respect to such borrowing in accordance with the DIP Facility; *provided*, *however*, that notwithstanding anything to the contrary in this Paragraph 8, no DIP Lender shall be required to make DIP Loans in excess of its DIP Loan Commitment.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "**Pre-Carve Out Amounts**"), but not, for the avoidance of doubt,

the Post-Carve Out Trigger Notice Cap, until Paid in Full and then, to the extent the Pre-Carve Out

Trigger Notice Reserve has not been reduced to zero, all remaining funds shall be distributed

ratably (based on the proportion of the Pre-Carve Out Trigger Notice Reserve funded by or from

the DIP Lenders or the DIP Collateral) to the DIP Agent on behalf of the DIP Lenders.

(c)      All funds in the Post-Carve Out Trigger Notice Reserve shall be used first

to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the

"**Post-Carve Out Amounts**"), and then, to the extent the Post-Carve Out Trigger Notice Reserve

has not been reduced to zero, all remaining funds shall be distributed ratably (based on the

proportion of the Post-Carve Out Trigger Notice Reserve funded by or from the DIP Lenders or

the DIP Collateral) to the DIP Agent on behalf of the DIP Lenders.  Notwithstanding anything to

the contrary in the DIP Loan Documents or this Final Order, if either of the Carve Out Reserves

are not funded in full in the amounts set forth in Paragraph 8(b) or this Paragraph 8(c), then any

excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out

Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out

Reserve, up to the applicable amount set forth in Paragraph 8(b) or this Paragraph 8(c), prior to

making any payments to the DIP Agent.  Notwithstanding anything to the contrary in the DIP Loan

Documents, this Final Order, or the Interim Order, following delivery of a Carve Out Trigger

Notice, the DIP Agent, the Prepetition Term Loan Agent, the Prepetition Seller Note Agent and

the other DIP Secured Parties, Prepetition RBL Secured Parties, Prepetition Term Loan Secured

Parties and Prepetition Seller Note Secured Parties shall not sweep or foreclose on cash (including

cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve

Out Reserves have been fully funded, but the DIP Agent shall have a security interest in any

residual interest in the Carve Out Reserves, with any excess paid in accordance with clauses (a)

and (b) above.  Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Advances (as that term is used in section 9.05 of the DIP Credit Agreement) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Credit Agreement, Prepetition RBL Credit Agreement, Prepetition Term Loan Agreement or Prepetition Seller Note Documents, the Carve Out shall be senior to all liens and claims securing the DIP Facilities, the DIP Liens, the DIP Superpriority Claims, and the Adequate Protection Liens, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations.  Notwithstanding anything herein, but subject to Paragraphs 7 and 16, no proceeds of DIP Collateral, Prepetition Collateral, Cash Collateral, the DIP Loans, or the Carve Out shall be used for the purpose of:  (a) investigating, objecting to, challenging, or contesting in any manner, or in raising any defense to, the amount, validity, extent, perfection, priority, enforceability, or avoidability of the Prepetition RBL Obligations, the Prepetition RBL Liens, the Prepetition Term Loan Obligations, the Prepetition Term Loan Liens, the Prepetition Seller Note Obligations, or the Prepetition Seller Note Liens or any liens or security interests with respect thereto, or any other rights or interests of any of the Prepetition Secured Parties, whether in their capacity as such or otherwise, including with respect to the Adequate Protection Liens, or in asserting any claims or causes of action against any of the Prepetition Secured Parties (whether in their capacity as such or otherwise), including, without limitation, for lender liability or pursuant

to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law, or otherwise.

(d)    <u>Payment of Allowed Professional Fees Prior to Trigger Notice Date</u>.  Prior to the occurrence of the Trigger Notice Date, the Debtors shall be permitted to pay allowed fees and expenses of the Debtors' Professional Persons, subject to this Final Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any interim compensation procedures order entered by this Court.

(e)    <u>No Direct Obligation to Pay Allowed Professional Fees; No Waiver of Right to Object to Fees</u>.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any Successor Case under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall (i) be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement or (ii) require any DIP Lender to make DIP Loans in excess of its DIP Loan Commitment. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial committee in these Cases or any Successor Case or of any other person or entity, or shall affect the right of the DIP Agent, the DIP Lenders, the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, or the Prepetition Seller Note Secured Parties to object to the allowance and payment of any such fees and expenses.

(f)    <u>Payment of Allowed Professional Fees Prior to Termination Declaration Date</u>.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(g)    <u>Payment of Carve Out On or After Termination Declaration Date</u>.  Any payment or reimbursement from the Carve Out Reserves made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out described in Paragraph 8(a)(iii)-(iv) of this Final Order on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

9.    **Waiver of 506(c) Claims**.  As a further condition of (i) the DIP Facility and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Loan Documents (and the consent of the DIP Secured Parties, the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties to the payment of the Carve Out to the extent provided herein) and (ii) the Debtors' use of Cash Collateral pursuant to this Final Order, (a) no costs or expenses of administration of the Cases or any Successor Cases shall be charged against or recovered from or against any or all of the DIP Secured Parties and/or the Prepetition RBL Secured Parties, the Prepetition RBL Collateral, the Prepetition Term Loan Secured Parties, the Prepetition Term Loan Collateral, the Prepetition Seller Note Secured Parties or the Prepetition Seller Note Collateral, the DIP Collateral, and the Cash Collateral, in each case pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Agent and the Prepetition RBL Agent (with respect to Prepetition RBL Collateral), the Prepetition Term Loan Agent (with respect to Prepetition Term

Loan Collateral), and the Prepetition Seller Note Agent (with respect to Prepetition Seller Note Collateral), (b) no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the DIP Secured Parties, the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties and (c) the exercise prior to the entry of this Final Order of any rights under section 506(c) of the Bankruptcy Code or otherwise to charge any costs or expense of administration of the Cases or any Successor Cases from or against the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, or the Prepetition Seller Note Secured Parties or their respective Liens on or other interests in any or all of the DIP Collateral, the Prepetition RBL Collateral, the Prepetition Term Loan Collateral, the Prepetition Seller Note Collateral, and the Cash Collateral shall not impair and shall be subject to, and junior to, the DIP Liens on and the DIP Secured Parties' other interests in the DIP Collateral, the Prepetition RBL Collateral, the Prepetition Term Loan Collateral, or the Prepetition Seller Note Collateral and the Cash Collateral and the other DIP Protections.

10.    **After-Acquired Property**.  Except as otherwise expressly provided in this Final Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any Lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable Lien as of the Petition Date (or a valid, enforceable, and unavoidable Lien that is perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code) that is not subject to subordination or avoidance under the Bankruptcy Code or other provisions or principles of applicable law.

11.    **Protection of DIP Secured Parties' Rights**.

(a)    Unless the requisite DIP Secured Parties under the DIP Loan Documents shall have provided their prior written consent or all DIP Obligations have been Paid in Full, there shall not be entered in any of these Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, other than the Carve Out, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, and/or the other DIP Protections provided to the DIP Secured Parties, unless the proceeds of such credit or indebtedness are used to Pay in Full the DIP Obligations; (ii) the use of Cash Collateral for any purpose other than to Pay in Full the DIP Obligations or as otherwise permitted in the DIP Loan Documents and this Final Order, or (iii) any modification of any of the DIP Secured Parties' rights under this Final Order, or the DIP Loan Documents with respect to any DIP Obligations.

(b)    The Debtors will, whether or not the DIP Obligations have been Paid in Full, (i) maintain books, records, and accounts to the extent and as required by the DIP Loan Documents, (ii) reasonably cooperate with, consult with, and provide to the DIP Secured Parties all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by any of the DIP Secured Parties) to provide under the DIP Loan Documents or the provisions of this Final Order, (iii) upon reasonable advance notice, permit consultants, advisors, and other representatives (including third party representatives) of each of the DIP Agent reasonable access to any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and

other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) in each case as and to the extent required by the DIP Loan Documents, (iv) permit the DIP Agent and their respective consultants, advisors, and other representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations, and assets, and (v) upon reasonable advance notice, permit the DIP Agent to conduct, at their discretion and at the Debtors' cost and expense, reasonable field audits, collateral examinations and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral, in each case as and to the extent required by the DIP Loan Documents. Notwithstanding anything to the contrary contained herein, the Debtors do not waive any right to attorney-client, work product, or similar privilege, and the Debtors shall not be required to provide the DIP Agent or their respective counsel and financial advisors with any information subject to attorney-client privilege or consisting of attorney work product.

12.     **Proceeds of Subsequent Financing**.   Without limiting the provisions and protections of the Carve Out and Paragraph 11 above, if at any time prior to the Payment in Full of all the DIP Obligations (including subsequent to the confirmation of any chapter 11 plan or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d), or any other provision of the Bankruptcy Code in violation of this Final Order or the DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent for application to the DIP Obligations until Paid in Full.

13.     **Disposition of DIP Collateral; Credit Bid**.

(a)     Unless the DIP Obligations and the Prepetition RBL Obligations are Paid in Full upon the closing of a sale or other disposition of the DIP Collateral or Prepetition RBL Collateral, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral or any Prepetition RBL Collateral (or enter into any binding agreement to do so) (other than the sale of crude oil, natural gas, or other hydrocarbons in the ordinary course of business) without the prior written consent of the DIP Agent and, solely with respect to the Prepetition RBL Collateral, the Prepetition RBL Agent (and no such consent shall be implied from any other action, inaction, or acquiescence by any DIP Secured Party or Prepetition RBL Secured Party or any order of this Court), except as permitted in the DIP Loan Documents and/or the Prepetition RBL Loan Documents, as applicable, and this Final Order.  Except to the extent otherwise expressly provided in the DIP Loan Documents, all proceeds from the sale, transfer, lease, encumbrance, or other disposition of any DIP Collateral (other than the sale of crude oil, natural gas, or other hydrocarbons in the ordinary course of business) shall be remitted to the DIP Agent for application to the DIP Obligations, in each case, in accordance with the terms of this Final Order and the DIP Loan Documents.  In addition, the Debtors are authorized and directed to enter into such blocked account agreements (with cash dominion, if the DIP Agent so elects) with the DIP Agent and such financial institutions as the DIP Agent may require, and, if it so elects, the DIP Agent shall be entitled to enjoy the benefit of all control agreements to which the Prepetition RBL Agent is a party without the need to enter into new blocked account agreements.

(b)     Subject to Paragraph 7 of this Final Order and the RSA, and unless the Court orders otherwise for cause, (i) the DIP Agent (or one or more of its designees, affiliates, or assignees) shall have the unqualified right to credit bid up to the full amount of any DIP

Obligations in any sale of the DIP Collateral (or any DIP Collateral subject to any Prepetition RBL Adequate Protection Liens) under or pursuant to (A) section 363 of the Bankruptcy Code, (B) any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code to the extent any sale contemplated thereunder does not result in Payment in Full of all of the DIP Obligations on the effective date of such plan, or (C) section 725 of the Bankruptcy Code, (ii) subject to Paragraph 7 of this Final Order and the RSA, the Prepetition RBL Agent (or one or more of its designees, affiliates, or assignees) shall have the right to credit bid up to the full amount of any Prepetition RBL Obligations in any sale of the Prepetition RBL Collateral (or any DIP Collateral subject to any Prepetition RBL Adequate Protection Liens) under or pursuant to (A) section 363 of the Bankruptcy Code, (B) any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code to the extent any sale contemplated thereunder does not result in Payment in Full of all of the Prepetition RBL Obligations on the effective date of such plan, or (C) section 725 of the Bankruptcy Code, in each case so long as all DIP Obligations are immediately Paid in Full in cash upon consummation of such credit bid, (iii) subject to Paragraph 7 of this Final Order and the RSA, the Prepetition Term Loan Agent (or one or more of its designees, affiliates, or assignees) shall have the right to credit bid up to the full amount of any Prepetition Term Loan Obligations in any sale of the Prepetition Term Loan Collateral (or any DIP Collateral subject to any Prepetition Term Loan Adequate Protection Liens) under or pursuant to (A) section 363 of the Bankruptcy Code, (B) any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code to the extent any sale contemplated thereunder does not result in Payment in Full of all of the Prepetition Term Loan Obligations on the effective date of such plan, or (C) section 725 of the Bankruptcy Code, in each case so long as all DIP Obligations are immediately Paid in Full in cash upon consummation of such credit bid, and (iv) subject to

Paragraph 7 of this Final Order and the RSA, the Prepetition Seller Note Agent (or one or more of its designees, affiliates, or assignees) shall have the right to credit bid up to the full amount of any Prepetition Seller Note Obligations in any sale of the Prepetition Seller Note Collateral (or any DIP Collateral subject to any Prepetition Seller Note Adequate Protection Liens) under or pursuant to (A) section 363 of the Bankruptcy Code, (B) any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code to the extent any sale contemplated thereunder does not result in Payment in Full of all of the Prepetition Seller Note Obligations on the effective date of such plan, or (C) section 725 of the Bankruptcy Code, in each case so long as all DIP Obligations are immediately Pain in Full in cash upon consummation of such credit bid. If the DIP Agent, the Prepetition RBL Agent, the Prepetition Term Loan Agent, or the Prepetition Seller Note Agent or their respective designees, affiliates, or assignees make a credit bid in connection with any auction or other sale process relating to the sale or other disposition of any DIP Collateral, Prepetition RBL Collateral, Prepetition Term Loan Collateral, or Prepetition Seller Note Collateral, as applicable, then for purposes of such auction or sale process or any applicable order of this Court, the DIP Agent, Prepetition RBL Agent, Prepetition Term Loan Agent, and/or Prepetition Seller Note Agent shall be automatically deemed to be a qualified bidder and its bid shall be automatically deemed to constitute a qualified bid, regardless of whether the qualified bidder or qualified bid requirements are satisfied.

14.    **Termination Events**.  The following shall constitute a termination event under this Final Order and the DIP Loan Documents unless waived in writing by each of the DIP Agent and the Prepetition RBL Agent (each, a "**Termination Event**"):

(a)    The occurrence of an "Event of Default" under the DIP Credit Agreement, as set forth therein (a "**DIP Default Termination Event**").

(b)      Any other breach, default, or other violation by any of the Debtors of the terms and provisions of the Interim Order or this Final Order, which breach, default or violation (other than any payment default, to which no grace period shall apply) is not cured within four (4) Business Days of the Debtors having notice of the occurrence thereof.

15.      **Rights and Remedies Upon Termination Event**.

(a)      Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified, without requiring prior notice to or authorization of this Court, subject to the Carve Out, to the extent necessary to permit the DIP Secured Parties to (i) exercise immediately upon the occurrence and during the continuance of any Termination Event, all rights and remedies under this Final Order, the DIP Loan Documents, and/or applicable non-bankruptcy law (other than those rights and remedies against the DIP Collateral and with respect to the Debtors' use of Cash Collateral in accordance with an Approved Budget during the five (5) Business Days after the Termination Declaration Date, each as provided in Paragraph 15(b) below), including the right to (A) declare all DIP Obligations to be immediately due and payable, (B) declare the termination, reduction, or restriction of any further commitment to extend credit to the Debtors, to the extent any such commitment remains, and/or (C) terminate the DIP Facility and any other DIP Loan Documents as to any future liability or obligation of the DIP Agent and the other DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations or affecting the obligations to advance DIP Loans to fund the Carve Out Reserves pursuant to Paragraph 8; and/or (ii) declare a termination, reduction, or restriction on the ability of the Debtors to use any Cash Collateral, subject to the obligation to fund the Carve Out Reserves (any such declaration under any of clauses 15(a)(i)(A), (B) or (C) or 15(a)(ii) shall be made to the respective lead counsel to the Debtors, the Committee, and the United States Trustee, and shall be

referred to herein as a "**Termination Declaration**" and the date that is the earliest to occur of any such Termination Declaration being herein referred to as the "**Termination Declaration Date**")).

(b)     In addition to the rights and remedies described above, five (5) Business Days following the Termination Declaration Date, unless prior to such time this Court determines that a Termination Event has not occurred and/or is not continuing, the DIP Agent is hereby granted relief from the automatic stay, without further notice, hearing, motion, order, or other action of any kind, to foreclose on, or otherwise enforce and realize on, its DIP Liens on all or any portion of the DIP Collateral, including by collecting accounts receivable and applying the proceeds thereof to the DIP Obligations, and by occupying the Debtors' premises to sell or otherwise dispose of the DIP Collateral.  Solely during the five (5) Business Day period after a Termination Declaration Date, the Debtors and any Committee shall be entitled to an emergency hearing before this Court and section 105 of the Bankruptcy Code may not be invoked by the Debtors in an effort to restrict or preclude any DIP Secured Party from exercising any rights or remedies set forth in this Final Order or the DIP Loan Documents.  During such five (5) Business Day period, the Debtors may not use Cash Collateral or any amounts previously or thereafter advanced under the DIP Facility except in accordance with the Approved Budget or to fund the Carve Out Reserves.

(c)     In the event that the DIP Obligations have been Paid in Full, any automatic stay otherwise applicable to the Prepetition Secured Parties is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the Prepetition Secured Parties to (i) exercise immediately upon the occurrence and during the continuance of any Termination Event, all rights and remedies under this Final Order, the Prepetition RBL Loan Documents, the Prepetition Term Loan Documents the Prepetition Seller Note Documents and/or

applicable non-bankruptcy law (other than those rights and remedies against the DIP Collateral, Prepetition RBL Collateral and the Debtors' use of Cash Collateral in accordance with an Approved Budget during the five (5) Business Days after the RBL Termination Declaration Date, each as provided in Paragraph 15(d) below), including the right to (A) declare all Prepetition RBL Obligations, Prepetition Term Loan Obligations, or Prepetition Seller Note Obligations, as applicable, to be immediately due and payable, (B) declare the termination, reduction, or restriction of any further commitment to extend credit to the Debtors, to the extent any such commitment remains, and/or (C) terminate the Prepetition RBL Credit Agreement and any other Prepetition RBL Loan Documents as to any future liability or obligation of the Prepetition RBL Agent and the other Prepetition RBL Secured Parties, but without affecting any of the Prepetition RBL Obligations or the Prepetition RBL Liens securing the Prepetition RBL Obligations; and/or (ii) declare a termination, reduction, or restriction on the ability of the Debtors to use any Cash Collateral subject to the obligation to fund the Carve Out Reserves (any such declaration under any of clauses 15(c)(i)(A), (B) or (C) or (ii) shall be made to the respective lead counsel to the Debtors, the Committee, and the United States Trustee, and shall be referred to herein as a "**RBL Termination Declaration**" and the date that is the earliest to occur of any such Termination Declaration being herein referred to as the "**RBL Termination Declaration Date**").

(d)    In addition to the rights and remedies described in Paragraph 15(c) above, in the event that the DIP Obligations have been Paid in Full, five (5) Business Days following the RBL Termination Declaration Date, unless prior to such time this Court determines that a Termination Event has not occurred and/or is not continuing, the Prepetition RBL Agent is hereby granted relief from the automatic stay, without further notice, hearing, motion, order, or other action of any kind, to foreclose on, or otherwise enforce and realize on, its Prepetition RBL Liens

on all or any portion of the Prepetition RBL Collateral, including by collecting accounts receivable and applying the proceeds thereof to the Prepetition RBL Obligations, and by occupying the Debtors' premises to sell or otherwise dispose of the Prepetition RBL Collateral.  Solely during the five (5) Business Day period after a RBL Termination Declaration Date, the Debtors and any Committee shall be entitled to an emergency hearing before this Court and section 105 of the Bankruptcy Code may not be invoked by the Debtors in an effort to restrict or preclude any Prepetition RBL Secured Party from exercising any rights or remedies set forth in this Final Order or the Prepetition RBL Loan Documents.  During such five (5) Business Day period, the Debtors may not use Cash Collateral or any amounts previously or thereafter advanced under the Prepetition RBL Credit Agreement except in accordance with the Approved Budget or to fund the Carve Out Reserves.

(e)    Upon the effectiveness of any relief from the automatic stay with respect to the DIP Facility pursuant to Paragraph 15(b) hereof, the Prepetition RBL Agent shall have relief from the automatic stay to the same extent as the DIP Agent, and without further notice, hearing, motion, order, or other action of any kind, to foreclose on, or otherwise enforce and realize on its Prepetition First Priority Liens and the Prepetition RBL Adequate Protection Liens on, all or any portion of the DIP Collateral or Prepetition RBL Collateral (including by collecting accounts receivable and applying the proceeds thereof to the Prepetition RBL Obligations, and by occupying the Debtors' premises to sell or otherwise dispose of the DIP Collateral or Prepetition RBL Collateral) or otherwise exercise remedies against the DIP Collateral or Prepetition RBL Collateral permitted by this Final Order, the Prepetition RBL Loan Documents, and/or applicable non-bankruptcy law; *provided*, *however*, that any such foreclosure or other enforcement by the Prepetition RBL Agent of any Prepetition RBL Liens or any Prepetition RBL Adequate Protection

Liens or any other such exercise of remedies by the Prepetition RBL Agent against the DIP Collateral or Prepetition RBL Collateral shall not interfere with or otherwise be inconsistent with any foreclosure or other enforcement by the DIP Agent of any DIP Liens or other DIP Protections or any other exercise of remedies by the DIP Agent, and any proceeds received by the Prepetition RBL Agent in connection with such foreclosure, enforcement, or other exercise of remedies shall be turned over to the DIP Agent for application to the DIP Obligations until Paid in Full.

(f)    Subject to the provisions of Paragraph 7 hereof, and subject to the Carve Out, all proceeds realized in connection with the exercise of the rights and remedies of the DIP Secured Parties or the Prepetition RBL Secured Parties shall be turned over *first* to the DIP Agent for application to the DIP Obligations under, and in accordance with the provisions of, the DIP Loan Documents and this Final Order until Payment in Full of all of the DIP Obligations, *then* to the Prepetition RBL Agent for application to the Prepetition RBL Obligations under, and in accordance with the provisions of, the Prepetition RBL Loan Documents and this Final Order until Payment in Full of the Prepetition RBL Obligations, *then*, with respect to the Prepetition Term Loan Borrower, to the Prepetition Term Loan Agent for application to the Prepetition Term Loan Obligations under, and in accordance with the provisions of, the Prepetition Term Loan Documents and this Final Order until Payment in Full of the Prepetition Term Loan Obligations, and *then*, with respect to the Prepetition Seller Note Grantors, to the Prepetition Seller Note Agent for application to the Prepetition Seller Note Obligations under, and in accordance with the provisions of, the Prepetition Seller Note Documents and this Final Order until Payment in Full of the Prepetition Seller Note Obligations.

(g)    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of this Final Order and the DIP Loan Documents as

necessary to (i) permit the Debtors to grant the Prepetition Seller Note Adequate Protection Liens, the Prepetition Term Loan Adequate Protection Liens, the Prepetition RBL Adequate Protection Liens and the DIP Liens and to incur all liabilities and obligations to the DIP Secured Parties and the Prepetition RBL Secured Parties under the DIP Loan Documents, the DIP Facility, and this Final Order, (ii) authorize the DIP Secured Parties, the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties to retain and apply payments made in accordance with the DIP Loan Documents, the Prepetition RBL Loan Documents, the Prepetition Term Loan Documents, the Prepetition Seller Note Documents, and/or this Final Order, (iii) to permit each of the DIP Agent, the other DIP Secured Parties, the Prepetition RBL Agent, the other Prepetition RBL Secured Parties, the Prepetition Term Loan Agent, the other Prepetition Term Loan Secured Parties, the Prepetition Seller Note Agent, and the other Prepetition Seller Note Secured Parties to perform any act authorized under this Final Order and the DIP Loan Documents, and (iv) otherwise to the extent necessary to implement and effectuate the provisions of this Final Order and the DIP Loan Documents.

16.    **Restriction on Use of Proceeds**. Notwithstanding anything herein to the contrary, no loans and/or proceeds from the DIP Facility, DIP Collateral, Cash Collateral (including any retainer held by any professionals for the below-referenced parties), Prepetition RBL Collateral, Prepetition Term Loan Collateral, Prepetition Seller Note Collateral, or any portion of the Carve Out may be used by (a) any Debtor, Committee, or trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity (including any of the Professional Persons retained by the Debtors, the Committee, or the members of any Committee ("**Committee Members**")) to investigate or prosecute any Challenge (including any litigation or other action) in connection with the value of the DIP Collateral or the Prepetition RBL Collateral

(or to pay any professional fees and disbursements incurred in connection therewith) at any time; or (b) any Debtor, any Committee, or any trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity (including any of the Professional Persons retained by the Debtors, the Committee or any Committee Members) to (or to pay any professional fees and disbursements incurred in connection therewith): (i) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, or otherwise, other than from the DIP Secured Parties, or to seek any modification to this Final Order not approved by the DIP Agent (after having obtained the approval of the requisite DIP Secured Parties under the DIP Credit Agreement) and (x) the Prepetition RBL Agent (after obtaining the approval of the requisite Prepetition RBL Secured Parties under the Prepetition RBL Credit Agreement) (only to the extent such modification would affect the rights of any of the Prepetition RBL Secured Parties), (y) the Prepetition Term Loan Agent (only to the extent such modifications would affect the rights of any of the Prepetition Term Loan Secured Parties), or (z) the Prepetition Seller Note Agent (only to the extent such modification would affect the rights of any of the Prepetition Seller Note Secured Parties); (ii) investigate (except as set forth below), assert, join, commence, support, or prosecute any action for any claim, counter- claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Secured Parties, the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, the Prepetition Seller Note Secured Parties, their respective affiliates, assigns, or successors and the respective officers, directors, employees, agents, attorneys, representatives, and other advisors of the foregoing, with respect to any transaction, occurrence, omission, action, or other matter (including formal or informal

discovery proceedings in anticipation thereof), including (A) any Challenges and any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (B) any action with respect to the validity, enforceability, priority, and extent of the DIP Obligations, the Prepetition RBL Obligations, the Prepetition Term Loan Obligations, and/or the Prepetition Seller Note Obligations, or the validity, extent, and priority of the DIP Liens, the Prepetition RBL Liens, the Prepetition RBL Adequate Protection Liens, the Prepetition Term Loan Liens, the Prepetition Term Loan Adequate Protection Liens, the Prepetition Seller Note Liens, or the Prepetition Seller Note Adequate Protection Liens; (C) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Liens, the other DIP Protections, the Prepetition RBL Liens, the Prepetition RBL Adequate Protection Liens, the other Prepetition RBL Adequate Protection, the Prepetition Term Loan Liens, the Prepetition Term Loan Adequate Protection Liens, the other Prepetition Term Loan Adequate Protection, the Prepetition Seller Note Liens, the Prepetition Seller Note Adequate Protection Liens, or the other Prepetition Seller Note Adequate Protection; (D) any "lender liability" cause of action; (E) except to contest in good faith the occurrence or continuance of any Termination Event as permitted in Paragraph 15, any action seeking, or having the effect of, preventing, hindering, or otherwise delaying any or all of the DIP Secured Parties', and, after the Payment in Full of the DIP Obligations, the Prepetition RBL Secured Parties', and, after Payment in Full of the Prepetition RBL Obligations, the Prepetition Term Lenders', and, after Payment in Full of the Prepetition Term Loan Obligations, the Prepetition Seller Noteholders', assertion, enforcement, or realization on the Cash Collateral, the DIP Collateral, or the Prepetition RBL Collateral in accordance with the DIP Loan Documents or the Prepetition RBL Loan Documents, as applicable, or this Final Order); and/or (F) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits

granted to any or all of the DIP Secured Parties, the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties hereunder or under the DIP Loan Documents or the Prepetition RBL Loan Documents, the Prepetition Term Loan Documents, or the Prepetition Seller Note Documents, as applicable, or any payments made thereunder or in respect thereof; *provided*, *however*, up to $50,000 in the aggregate of the Carve Out, any DIP Collateral, any Prepetition RBL Collateral, any Prepetition Term Loan Collateral, any Cash Collateral, and proceeds of the DIP Facility may be used by the Committee (to the extent such Committee is appointed) to investigate (but not to prosecute) the claims and/or Liens of the Prepetition RBL Agent and the other Prepetition RBL Secured Parties under the Prepetition RBL Loan Documents, the Prepetition Term Loan Agent and the other Prepetition Term Loan Secured Parties under the Prepetition Term Loan Documents, or the Prepetition Seller Note Agent and other Prepetition Seller Noteholders under the Prepetition Seller Note Documents (but not the claims and/or Liens of the DIP Agent and the other DIP Secured Parties) so long as such investigation occurs within the Challenge Period; (iii) pay any fees or similar amounts to any person (other than the Prepetition RBL Secured Parties) who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the DIP Agent and the Prepetition RBL Agent; or (iv) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral or Prepetition RBL Collateral, unless otherwise permitted hereby, without the prior written consent of the DIP Agent and the Prepetition RBL Agent, as applicable.

17.    **Proofs of Claim**.  The Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein.  The Debtors' RBL Stipulations, Debtors' Term Loan Stipulations, and Debtors' Seller Note Stipulations shall be

deemed to constitute a timely filed proof of claim for the Prepetition RBL Secured Parties in respect of all Prepetition RBL Obligations, the Prepetition Term Loan Secured Parties in respect of all Prepetition Term Loan Obligations, and the Prepetition Seller Note Secured Parties in respect of all Prepetition Seller Note Obligations.  In addition, the Prepetition Seller Note Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition RBL Secured Parties and the DIP Secured Parties will not be required to file any request for allowance and/or payment of any administrative expenses, and this Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition RBL Obligations, Prepetition Term Loan Obligations, or any Prepetition Seller Note Obligations constituting administrative expenses or any DIP Obligations, as applicable.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, each of the Prepetition RBL Agent, for the benefit of itself and the other Prepetition RBL Secured Parties, the DIP Agent, for the benefit of itself and the other DIP Secured Parties, the Prepetition Term Loan Agent, for the benefit of itself and the other Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Agent, for the benefit of itself and the other Prepetition Seller Note Secured Parties, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, in its discretion) in each of the Cases or Successor Cases (i) in the case of the Prepetition RBL Agent, the Prepetition Term Loan Agent, and the Prepetition Seller Note Agent, a proof of claim and/or aggregate proofs of claim in respect of any Prepetition RBL Obligations, Prepetition Term Loan Obligations, or Prepetition Seller Note Obligations, as applicable, and (ii) in the case of each of the Prepetition RBL Agent, the Prepetition Term Loan Agent, the Prepetition Seller Note Agent, and the DIP Agent, a request or aggregate requests for allowance and/or payment of any portion of the Prepetition RBL Obligations, Prepetition Term Loan Obligations,

or Prepetition Seller Note Obligations constituting administrative expenses or any DIP Obligations, as applicable.

18. **Preservation of Rights Granted Under this Final Order**.

(a)    No Non-Consensual Modification or Extension of this Final Order.  In the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, such modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances, payments, or use of cash authorized or made hereby or pursuant to the DIP Loan Documents, or Lien, claim, priority, or other DIP Protections authorized or created hereby or pursuant to the DIP Loan Documents, except to the extent such advances, payments, or use of cash, or Lien, claim, priority, or other DIP Protections are stayed pending appeal.  Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed by a subsequent order of this Court or any other court, the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and notwithstanding any such reversal, modification, vacatur, or stay, any use of Cash Collateral or any DIP Obligations or any DIP Protections (including the Prepetition Adequate Protection) incurred or granted by the Debtors prior to the actual receipt of written notice by the DIP Agent, the Prepetition RBL Agent the Prepetition Term Loan Agent or the Prepetition Seller Note Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall remain in full force and effect and be binding on all parties in interest and be governed in all respects by the original provisions of this Final Order (and shall maintain their respective priorities as provided by this Final Order), and the

DIP Secured Parties and the Prepetition RBL Secured Parties shall be entitled to all of the DIP

Protections (including the Prepetition Adequate Protection) and all other rights, remedies, Liens,

priorities, privileges, protections, and benefits granted pursuant to section 364(e) of the Bankruptcy

Code, this Final Order, or the DIP Loan Documents, except to the extent such use of Cash

Collateral or incurrence or granting of any DIP Obligations or DIP Protections, as applicable, are

stayed pending appeal.

(b)    Dismissal.    Subject to Paragraph 7 of this Final Order, if any order

dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time

entered, then notwithstanding any such dismissal, (i) the DIP Protections (including the Prepetition

Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and

benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties,

respectively, shall remain in full force and effect and be binding on all parties in interest and be

governed in all respects by the provisions of this Final Order (and shall maintain their respective

priorities as provided by this Final Order) until all DIP Obligations, all Prepetition RBL

Obligations, all Prepetition Term Loan Obligations, and all Prepetition Seller Note Obligations

have been Paid in Full, and such order of dismissal shall so provide (in accordance with sections

105 and 349 of the Bankruptcy Code), and (ii) this Court shall retain jurisdiction, notwithstanding

such dismissal, for the purposes of enforcing such DIP Protections (including the Prepetition

Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and

benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties,

respectively.

(c)    Survival of Interim Order.    Subject to Paragraph 7 of this Final Order, the

provisions of this Final Order and the DIP Loan Documents, any actions taken pursuant hereto or

thereto, and all of the DIP Protections (including the Prepetition Adequate Protection), and all

other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all

of the DIP Secured Parties and the Prepetition Secured Parties, respectively, shall survive, and

shall not be modified, impaired, or discharged by, the entry of any order confirming any plan of

reorganization in any Case or Successor Case, converting any Case to a case under chapter 7,

dismissing any of the Cases, withdrawing of the reference of any of the Cases or any Successor

Cases or providing for abstention from handling or retaining of jurisdiction of any of the Cases or

any Successor Case in this Court, or terminating the joint administration of these Cases or any

Successor Case or by any other act or omission.  The terms and provisions of this Final Order,

including all of the DIP Protections (including the Prepetition Adequate Protection) and all other

rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the

DIP Secured Parties and the Prepetition Secured Parties, respectively, shall continue in full force

and effect and be binding on all parties in interest notwithstanding the entry of any such order, and

such DIP Protections (including the Prepetition Adequate Protection), and such other rights,

remedies, Liens, priorities, privileges, protections, and benefits, shall continue in full force and

effect in these proceedings and in any Successor Cases and after dismissal of any thereof, and shall

maintain their respective priorities as provided by this Final Order the DIP Obligations shall not

be discharged by the entry of an order confirming any such chapter 11 plan, the Debtors having

waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

     19.   **Insurance Policies**.  Upon entry of the Interim Order, the DIP Agent, the other DIP

Secured Parties, the Prepetition RBL Agent, or the other Prepetition RBL Secured Parties shall be,

and shall be deemed to be, without any further action or notice, named as additional insureds and

loss payees, as applicable, on each insurance policy maintained by the Debtors that in any way

relates to the DIP Collateral, and the Debtors shall take such actions as are reasonably requested by the DIP Agent or the Prepetition RBL Agent from time to time to evidence or effectuate the foregoing.

20.    **Swap Agreements**.    The Debtors are authorized to enter into new Swap Agreements,[4] which shall be entered into solely in accordance with the DIP Credit Agreement. Pursuant and subject to section 4.03(c) of the RSA, the counterparties to the Pre-Petition Swap Agreements have agreed to waive termination rights that may result from certain Potential Events of Default and Events of Defaults (as defined in such Pre-Petition Swap Agreement) related to the commencement of the Cases, and the Debtors and the counterparties to the Pre-Petition Swap Agreements  are authorized to continue to perform under such Pre-Petition Swap Agreements, subject to the waivers and agreements set forth in the RSA.  All Swap Obligations owing to a Secured Swap Counterparty (other than Excluded Swap Obligations) under a Pre-Petition Swap Agreement or any post-petition Secured Swap Agreement shall constitute DIP Obligations for all purposes hereunder and under the DIP Loan Documents, subject to the terms of the DIP Credit Agreement.

21.    **Preservation of Prepetition Priorities and Interests**.

(a)    Nothing in this Final Order is intended to change or otherwise modify the prepetition priorities among secured creditors of the Debtors, including any sureties', operators', or nonoperators' recoupment rights to the extent their rights are valid, enforceable, nonavoidable, and perfected, and nothing in this Final Order shall be deemed to have changed or modified such prepetition priorities, all of which are hereby expressly preserved; *provided*, *however*, that the

---

[4]    All defined terms used in this Paragraph 20 shall have the meanings ascribed to such terms in the DIP Credit Agreement.

Debtors, the Committee, the DIP Secured Parties, and all other parties in interest reserve all rights to object to any of the foregoing claims or liens.

(b)       Nothing in this Final Order or any other interim or final order related to the DIP Facility is intended to, or shall have the effect of voiding, waiving, changing, disallowing, subordinating or otherwise modifying (i) the terms of any agreements between any of the Debtors and Equitrans, L.P. or any of its parents, subsidiaries or affiliates (collectively, "**EQM**"); or (ii) the rights and priorities of EQM with respect to any lien, interest or covenant created by or arising in connection with (a) applicable law including, but not limited to, section 7-307 or the like (relating to a lien of a carrier) of any applicable Uniform Commercial Code, (b) the Credit Agreement, dated August 18, 2010, (c) the Transportation Service Agreement CW2239335-510, dated August 1, 2017, (d) the Credit Agreement dated July 29, 2011, (e) the Transportation Service Agreement CW2239579-700 dated August 1, 2017, (f) the Gas Tariff, First Revised Volume No. 1 effective August 5, 2017, (g) any other gas gathering or other agreements between EQM and Arsenal Resources Energy LLC and (h) any exhibits, schedules, annexes, modifications, amendments and ratifications related to subparts (b) through (g) of this Paragraph.

22.    **Other Rights and Obligations**.

(a)       Expenses.  To the extent provided in the DIP Loan Documents (and without limiting the Debtors' respective obligations thereunder), the applicable Debtors will pay all reasonable and documented expenses incurred by the DIP Agent (including the reasonable fees and disbursements of all counsel for the DIP Agent and any internal or third-party appraisers, consultants, advisors, and auditors engaged by or for the benefit of the DIP Agent and/or its counsel) in connection with the Cases, including the preparation, execution, delivery, and administration of the DIP Loan Documents, the Interim Order, this Final Order and any other

agreements, instruments, pleadings, or other documents prepared or reviewed in connection with any of the foregoing, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated.

(b)    Notice of Professional Fees.    Professionals for the DIP Agent, the Prepetition RBL Agent (including professionals engaged by counsel to the DIP Agent or Prepetition RBL Agent, as applicable), the Prepetition Term Loan Secured Parties (including professionals engaged by counsel to the Prepetition Term Loan Secured Parties), and the Prepetition Seller Note Secured Parties (including professionals engaged by counsel to the Prepetition Seller Note Secured Parties) (collectively, the "**Lender Professionals**") shall not be required to submit invoices to this Court, the United States Trustee, any Committee or any other party in interest.    Copies of summary invoices submitted to the Debtors by such Lender Professionals shall be forwarded by the Debtors to the United States Trustee, counsel for any Committee, and such other parties as this Court may direct.    The summary invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; *provided*, *however*, that such summary invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summary invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or other applicable privilege.    If the Debtors, the United States Trustee, or any Committee object to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within ten (10) days of receipt of such invoices, then the Debtors, the United States Trustee, or the Committee, as the case may be, shall file with this Court and serve on such Lender Professionals an objection (the "**Fee Objection**") limited to the issue of the

reasonableness of such fees and expenses, and any failure by any such party to file a Fee Objection within such ten (10) day period shall constitute a waiver of any right of such party to object to the applicable invoice.  Notwithstanding any provision herein to the contrary, any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a professional fee invoice in respect of Lender Professionals shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection. The Debtors shall timely pay in accordance with the terms and conditions of this Final Order (a) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed and (b) all fees, costs, and expenses on any invoice to which no Fee Objection has been timely filed.  All such unpaid fees, costs, expenses, and charges of the DIP Agent that have not been disallowed by this Court on the basis of an objection filed by the Debtor, the United States Trustee, or the Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall constitute DIP Obligations and shall be secured by the DIP Collateral as specified in this Final Order.  Any and all fees, commissions, costs, and expenses paid prior to the Petition Date by any Debtor to the DIP Agent or the other DIP Secured Parties in connection with or with respect to the DIP Facility, the DIP Credit Agreement, or the other DIP Loan Documents are hereby approved in full and non-refundable and shall not otherwise be subject to any Challenge.

(c)    Binding Effect.  Subject only to Paragraph 7 above, the provisions of this Final Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in these Cases and any Successor Cases, including the DIP Secured Parties, the Prepetition Secured Parties, any Committee, and the Debtors and their respective estates, successors, and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or

elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Cases, in any Successor Cases, or upon dismissal of any such Case or Successor Case; *provided*, *however*, that the DIP Secured Parties, the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties shall have no obligation to permit the use of their respective Cash Collateral (if any) or any other Prepetition RBL Collateral, Prepetition Term Loan Collateral or Prepetition Seller Note Collateral, as applicable, or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

(d)     No Waiver.  The failure of the Prepetition Seller Note Secured Parties, the Prepetition Term Loan Secured Parties, the Prepetition RBL Secured Parties or the DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the Prepetition Seller Note Documents, the Prepetition Term Loan Documents, the Prepetition RBL Loan Documents, the DIP Loan Documents, or otherwise (or any delay in seeking or exercising same) shall not constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.  Nothing contained in this Final Order (including the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to any Prepetition Seller Note Secured Party, Prepetition Term Loan Secured Party, Prepetition RBL Secured Party or any DIP Secured Party, including rights of a party to a swap agreement, securities contract, commodity contract, forward contract, or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion).  Except as prohibited by this Final Order, the entry of this Final

Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any right or ability of the Prepetition Seller Note Secured Parties, the Prepetition Term Loan Secured Parties, the Prepetition RBL Secured Parties, or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Cases or any Successor Cases to cases under chapter 7, dismissal of the Cases or any Successor Cases, or the appointment of a trustee or examiner in the Cases or any Successor Cases, or to oppose the use of Cash Collateral in any Successor Case or on terms other than those set forth in this Final Order, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to any of the Debtors or seek early termination of the Debtors' exclusive rights to propose a plan under the Bankruptcy Code, or (iii) except as expressly provided herein, exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Secured Parties, the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, or the Prepetition Seller Note Secured Parties respectively, under the DIP Loan Documents, the Prepetition RBL Loan Documents, the Prepetition Term Loan Documents, or the Prepetition Seller Note Documents, the Bankruptcy Code, or otherwise.  Except to the extent otherwise expressly provided in this Final Order or by law, neither the commencement of the Cases nor the entry of this Final Order shall limit or otherwise modify the rights and remedies of the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties under the Prepetition RBL Loan Documents, the Prepetition Term Loan Documents, or the Prepetition Seller Note Documents, as applicable, or with respect to any non-Debtor entities or their respective assets, whether such rights and remedies arise under the Prepetition RBL Loan Documents, the Prepetition Term Loan Documents, the Prepetition Seller Note Documents, applicable law, or equity.

(e)    <u>No Third Party Rights</u>.  Except as explicitly provided for herein or in any DIP Loan Document, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or direct, indirect, or incidental beneficiary.  In determining to make any loan (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Loan Documents, the DIP Secured Parties and the Prepetition RBL Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar federal, state or local statute or regulation) or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

(f)    <u>No Marshaling</u>.  None of the DIP Secured Parties nor the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, or the Prepetition Seller Note Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, the Prepetition RBL Collateral, the Prepetition Term Loan Collateral, or the Prepetition Seller Note Collateral, as applicable; *provided*, *however*, that absent prior written consent of Columbia Gas Transmission, LLC and notwithstanding any provision to the contrary in the Interim Order, this Final DIP Order, the DIP Credit Agreement, the other DIP Loan Documents, the Prepetition RBL Credit Agreement or the other Prepetition RBL Loan Documents, any plan of reorganization or confirmation order entered in these chapter 11 cases, prior to seeking payment of any DIP Obligations, DIP Superpriority Claims, or Prepetition RBL Adequate Protection Superpriority Claims, including any Claims pursuant to section 507(b) of the

Bankruptcy Code, from any proceeds of (x) Avoidance Actions that are assets of the estate of Arsenal Resources Energy LLC ("**ARE**") or (y) any intercompany claims payable to ARE, the DIP Secured Parties and the Prepetition RBL Secured Parties shall first satisfy such DIP Obligations, DIP Superpriority Claims, or Prepetition RBL Adequate Protection Superpriority Claims, as applicable, from all other DIP Collateral.

(g)    Amendments.  The Debtors are authorized and empowered, without further notice and hearing or approval of this Court, to amend, modify, supplement, or waive any provision of the DIP Loan Documents in accordance with the provisions thereof, in each case unless such amendment, modification, supplement, or waiver (i) increases the interest rate (other than as a result of the imposition of the default rate), (ii) increases the aggregate lending commitments of all of the DIP Lenders in respect of the DIP Facility by more than $5,000,000, (iii) shortens the Maturity Date (as defined in the DIP Credit Agreement), or (iv) adds or amends (in any respect unfavorable to the Debtors) any Event of Default.  No waiver, modification, or amendment of any of the provisions of the DIP Loan Documents shall be effective unless set forth in writing, signed by or on behalf of all the Debtors and the DIP Agent (after having obtained the approval of the requisite DIP Secured Parties under the DIP Credit Agreement) and, except as provided herein, approved by this Court.  Notwithstanding the foregoing, no waiver, modification or amendment of any of the provisions of this Final Order or the DIP Loan Documents that would directly and adversely affect the rights or interests of the Prepetition RBL Secured Parties shall be effective unless also consented to in writing by the Prepetition RBL Agent on behalf of the Prepetition RBL Secured Parties (after obtaining the approval of the requisite Prepetition RBL Secured Parties under the Prepetition RBL Credit Agreement).  Nothing in this Paragraph 22(g) shall deemed or construed to authorize the Debtors to amend, modify, supplement, or waive any provision of the

DIP Loan Documents in a manner that would directly and adversely affect the rights or interests of the Prepetition Term Loan Secured Parties or the Prepetition Seller Note Secured Parties.

(h)    <u>Inconsistency</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Final Order, the provisions of this Final Order shall govern and control.  In the event of any inconsistency between the terms or conditions of this Final Order and the terms or conditions of any other order entered by this Court in the nature of a First Day Order, the provisions of this Final Order shall govern and control.

(i)    <u>Enforceability</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

(j)    <u>Reservation of Rights</u>.  Nothing in this Final Order shall be deemed to constitute the consent of the DIP Secured Parties, the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, or the Prepetition Seller Note Secured Parties, and each of the foregoing expressly reserve the right to object, to entry of any Order of the Court that provides for the sale or other disposition of all or substantially all of the assets of the Debtors (or any other sale or other disposition of assets of any of the Debtors outside the ordinary course of business) to any party unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to Pay in Full the DIP Obligations, the Prepetition RBL Obligations, the Prepetition RBL Adequate Protection, the Prepetition Term Loan Obligations, the Prepetition

Term Loan Adequate Protection, the Prepetition Seller Note Obligations, and the Prepetition Seller Note Adequate Protection and all of the foregoing are Paid in Full on the closing date of such sale.

(k)     No Requirement to Accept Title to Collateral.  The DIP Secured Parties, the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties shall not be obligated to accept title to any portion of the DIP Collateral, the Prepetition RBL Collateral, the Prepetition Term Loan Collateral, or the Prepetition Seller Note Collateral in payment of any of the DIP Obligations, Prepetition RBL Obligations, Prepetition Term Loan Obligations, or Prepetition Seller Note Obligations as applicable, in lieu of payment in cash or cash equivalents, nor shall the DIP Secured Parties, the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, and the Prepetition Seller Note Secured Parties be obligated to accept payment in cash or cash equivalents that is encumbered by any interest of any person or entity other than the DIP Secured Parties or the Prepetition RBL Secured Parties, the Prepetition Term Loan Secured Parties, or the Prepetition Seller Note Secured Parties, as applicable.

(l)     Headings.  Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Final Order.

23.     **Retention of Jurisdiction**.  This Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: December 2nd, 2019
Wilmington, Delaware

BRENDAN L. SHANNON UNITED STATES BANKRUPTCY JUDGE