## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>ARSENAL RESOURCES DEVELOPMENT LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-12347 (BLS)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 18, 19, 93, 175, 195 & 197** |

## ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT AND THE PREPETITION SOLICITATION PROCEDURES AND (II) CONFIRMING THE FIRST AMENDED JOINT PRE-PACKAGED PLAN OF REORGANIZATION

The debtors and debtors in possession (the "***Debtors***") in the above-captioned chapter 11

cases (the "***Chapter 11 Cases***") having:

a.  commenced, on November 7, 2019, a prepetition solicitation of votes on the *Joint Pre-Packaged Plan of Reorganization of Arsenal Resources Development LLC and its Debtor Affiliates* [Docket No. 18] (the "***Original Plan***" as amended by the Amended Plan (as defined below), and, collectively, as the same may be further amended, modified and supplemented from time to time, the "***Plan***")[2] by distributing to those Holders of Claims entitled to vote on the Plan (the "***Voting Parties***"):[3] the Plan; the *Disclosure Statement for Joint Pre-Packaged Plan of Reorganization of Arsenal Resources Development LLC and its Debtor Affiliates* [Docket No. 19] (the "***Disclosure Statement***"); and ballots to vote on the Plan (the

---

[1]  The debtors in the chapter 11 cases, along with the last four digits of each debtor's United States federal tax identification number, are: Arsenal Resources Development LLC (4072); Arsenal Energy Holdings LLC (6279); Arsenal Resources Intermediate Holdings LLC (5901); Arsenal Resources Energy LLC (2820); Arsenal Resources Development Holdings 2 LLC (3020); Arsenal Resources Development Holdings 1 LLC (9647); Arsenal Gas Marketing LLC (1113); Arsenal Midstream LLC (9654); Arsenal Water LLC (2465); Ulysses Gathering LLC (6546); Mar Key LLC (5428); Arsenal Resources LLC (3422); River Ridge Energy Holdings, LLC (8135); River Ridge Energy, LLC (5623); River Ridge Pennsylvania, LLC (5444); River Ridge Operating, LLC (4051); and Seneca-Upshur Petroleum, LLC (9204). The debtors' mailing address is 6031 Wallace Road Ext., Suite 300, Wexford, PA 15090.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

[3]  *See* the *Affidavit of Service of Solicitation Materials* [Docket No. 60] (the "***Solicitation Affidavit***" and together with the Confirmation Hearing Affidavits and the Voting Affidavit (each as defined below) and the various other affidavits and declarations of service relating to the matters set forth in this preamble, the "***Affidavits***").

"*Ballots*", and together with the Plan and the Disclosure Statement, the "*Solicitation Package*");

b.    served the *Notice of (I) Commencement of Pre-Packaged Chapter 11 Cases Under Chapter 11 of the Bankruptcy Code, (II) Combined Hearing to Consider (A) Adequacy of Disclosure Statement and (B) Confirmation of Pre-Packaged Plan, (III) Assumption of Executory Contracts and Unexpired Leases and Cure Amounts and (IV) Objection Deadlines* [Docket No. 101] (the "*Combined Notice*"), which provided a summary of the Plan, on all known Holders of Claims against and Equity Interests in the Debtors, the U.S. Trustee, and certain other parties in interest on November 13, 2019;[4]

c.    filed, on November 8, 2019 (the "*Petition Date*"), the *Declaration of James Daloia of Prime Clerk LLC Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Joint Pre-Packaged Plan of Reorganization of Arsenal Resources Development LLC and its Debtor Affiliates* [Docket No. 21] (the "*Voting Affidavit*"), which provides that, after the one-day solicitation period, the Debtors received acceptances on the Plan from all Voting Parties;

d.    filed and served notice of the documents comprising the Plan Supplement on December 5, 2019 and December 17, 2019 [Docket Nos. 175 and 195] (collectively, and as may be further amended or supplemented, the "*Plan Supplement*");

e.    filed, on December 17, 2019:

   i.    the *Memorandum of Law (A) in Support of an Order (I) Approving the Adequacy of the Disclosure Statement and the Prepetition Solicitation Procedures and (II) Confirming the First Amended Joint Pre-Packaged Plan of Reorganization and (B) to Reply to Objections* [Docket No. 202] (the "*Confirmation Brief*");

   ii.    the *Declaration of Allen Goetz, the Debtors' Chief Financial Officer, in Support of the Memorandum of Law (A) in Support of an Order (I) Approving the Adequacy of the Disclosure Statement and the Prepetition Solicitation Procedures and (II) Confirming the First Amended Joint Pre-Packaged Plan of Reorganization and (B) to Reply to Objections* [Docket No. 201] (the "*Goetz Confirmation Declaration*");

   iii.    the *Declaration of Matthew J. Henry in Support of an Order (I) Approving the Adequacy of the Disclosure Statement and the Prepetition Solicitation Procedures and (II) Confirming the First Amended Joint Pre-Packaged Plan of Reorganization* [Docket No. 200] (the "*Henry Declaration*"); and

---

[4]    *See* the *Affidavit of Service* [Docket No. 126] and the *Affidavit of Publication* [Docket No. 128] (collectively, the "*Confirmation Hearing Affidavits*").

iv.    the *Declaration of Avi Robbins in Support of an Order (I) Approving the Adequacy of the Disclosure Statement and the Prepetition Solicitation Procedures and (II) Confirming the First Amended Joint Pre-Packaged Plan of Reorganization* [Docket No. 199] (the "**Robbins Declaration**");

f.    operated their businesses during the Chapter 11 Cases as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code; and

g.    consolidated the Chapter 11 Cases for procedural purposes only in accordance with the *Order Authorizing Joint Administration of Chapter 11 Cases* [Docket No. 80], and, accordingly, the Plan represents a separate plan of reorganization for each Debtor; and

The Court having:

a.    determined that: (i) it has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; (ii) approval of the Disclosure Statement and confirmation of the Plan are core proceedings under 28 U.S.C. § 157(b)(2); (iii) it has jurisdiction to (a) approve the adequacy of information contained in the Disclosure Statement and the Solicitation Procedures (defined below) and to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed, and (b) enter a final order (this "Order"), consistent with Article III of the United States Constitution, with respect thereto; and (iv) venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

b.    reviewed the solicitation procedures regarding votes to accept or reject the Plan (the "**Solicitation Procedures**"), which were conditionally approved by the *Order (I) Scheduling Combined Hearing on Adequacy of Disclosure Statement and Confirmation of Pre-Packaged Plan; (II) Fixing Deadline to Object to Disclosure Statement and Pre-Packaged Plan; (III) Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing, and Objection Deadline; (IV) Approving Notice and Objection Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (V) Conditionally (A) Directing the United States Trustee Not to Convene Section 341(a) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities; and (VI) Granting Related Relief*, entered on November 12, 2019 [Docket No. 93] (the "**Scheduling Order**") and the related motion [Docket No. 17] (the "**Scheduling Motion**");

c.    held the Confirmation Hearing on December 19, 2019, at 10:00 a.m., prevailing Eastern Time, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

d.      reviewed the *Declaration of Allen Goetz, the Debtors' Chief Financial Officer, in Support of the Chapter Petitions and First Day Relief* [Docket No. 2] (the "***First Day Declaration***"), the Plan (including all modifications thereto), the Plan Supplement, the Disclosure Statement, the Ballots, the Confirmation Brief, the Goetz Confirmation Declaration, the Henry Declaration, the Robbins Declaration, the Affidavits; heard the statements, arguments, and any objections made at the Confirmation Hearing; and considered all other materials and evidence filed, presented or submitted regarding approval of the Disclosure Statement and the Solicitation Procedures and Confirmation of the Plan, including all objections, statements, and reservations of rights, if any, made with respect thereto;[5] and

e.      taken judicial notice of the papers and pleadings filed, all orders entered and all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of the Chapter 11 Cases;

**NOW, THEREFORE**, after due deliberation thereon and good cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Plan satisfies all the requirements for confirmation, including those set forth in section 1129 of the Bankruptcy Code;

B.      The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Scheduling Order.  The Exculpated Parties participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of the securities offered under the Plan, and therefore are entitled to the protections of section 1125(e) of the Bankruptcy Code;

C.      The Debtors have proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law.  The Debtors' good faith is evidenced from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the record of the Confirmation Hearing, and other proceedings held in the Chapter 11 Cases.  The terms of the Plan

---

[5]   See the *Limited Objection of Cleveland Brothers Equipment Co., Inc. to the Joint Pre-Packaged Plan of Reorganization of Arsenal Resources Development LLC and its Debtor Affiliates* [Docket No. 185] (the "***Cleveland Brothers Confirmation Objection***").

(including all documents necessary to effectuate the Plan) were negotiated at arm's length among the Debtors, the Consenting Stakeholders, and their respective advisors and are in the best interests of the Debtors, the Reorganized Debtors, the Debtors' Estates and the Holders of Claims and Equity Interests and other parties in interest. The payment of fees and expenses in connection with the Plan (including all documents necessary to effectuate the Plan, including the New RBL Loan Documents) is fair and reasonable and supported by reasonably equivalent value and fair consideration;

D.     The provisions of the Plan, including the Debtor releases contained in Article XI.E of the Plan, constitute good faith compromises and settlements of all Claims and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest, good and valid justifications have been demonstrated in support of the Debtor releases and such compromises and settlements, and the compromises and settlements of all such Claims and controversies are in the best interests of the Debtors, their Estates, the Reorganized Debtors and Holders of Claims and Equity Interests, are fair, equitable and reasonable and satisfy the standards for approval under Bankruptcy Rule 9019, as applicable. Due and adequate notice of, and, to the extent applicable, the opportunity to opt out of or object to the third-party releases contained in Article XI.F of the Plan has been provided, including to Holders in the Deemed Rejecting Classes (defined in the Confirmation Brief), and such third-party releases are consensual and appropriate. The exculpation contained in Article XI.D of the Plan is appropriate;

E.     Adequate and sufficient notice of the modifications to the Original Plan has been given, no other further notice, or re-solicitation of votes on the Plan, including the amendments set

forth in the Amended Plan, is required; the modifications to the Amended Plan do not materially adversely affect the treatment of any Claim against or Equity Interest in any of the Debtors under the Plan and, accordingly, the votes cast to accept the Original Plan are deemed to have been cast with respect to the Amended Plan; and

F.    Notice of the Confirmation Hearing and the Executory Contracts and Unexpired Leases to be assumed or rejected under the Plan has been adequate and appropriate and all parties have had a full and fair opportunity to be heard on all issues raised by any objections to approval of the Disclosure Statement and the Solicitation Procedures and confirmation of the Plan, including the assumption or rejection of Executory Contracts or Unexpired Leases to be assumed or rejected under the Plan, and that all such objections and all other statements and reservations of rights not consensually resolved or withdrawn are overruled on the merits.

**NOW, THEREFORE**, after due deliberation thereon and good cause appearing therefor, IT IS HEREBY FURTHER FOUND AND DETERMINED AND ORDERED, ADJUDICATED, AND DECREED THAT:

## I.    Findings of Fact and Conclusions of Law

1.    The recitals, findings of fact and conclusions of law above are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.

## II.    Notice

2.    As evidenced by the Affidavits, notice of each of the Disclosure Statement, the Plan, the Executory Contract Procedures (defined in the Scheduling Motion), the Plan Supplement and the Confirmation Hearing was appropriate and satisfactory in all respects. Furthermore, the service of the foregoing, including the Combined Notice, and the deadlines for (x) voting to accept or reject the Plan, (y) to object to the Disclosure Statement and the Plan and (z) to object to

assumption or rejection of Executory Contracts and Unexpired Leases afforded parties in interest timely, sufficient, appropriate and adequate notice of the Confirmation Hearing and the applicable deadlines, were appropriate and satisfactory and are approved in all respects.

## III.    Combined Hearing on the Disclosure Statement and Plan Confirmation

3.      It was appropriate to hold the Confirmation Hearing on the Debtors' request for approval of the Disclosure Statement and confirmation of the Plan under sections 105(d)(2)(B)(vi) and 1125(g) of the Bankruptcy Code, and Bankruptcy Rule 3018(b).

## IV.    Approval of the Disclosure Statement

4.      The Disclosure Statement is approved in all respects as containing "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) in accordance with section 1125 of the Bankruptcy Code.

5.      Any and all objections and reservations of rights to the Disclosure Statement that have not been withdrawn, waived, or resolved prior to the Confirmation Hearing are hereby overruled on the merits.

## V.    Solicitation

6.      Prior to the Petition Date, the Solicitation Package was transmitted and served in compliance with sections 1125(g) and 1126(b) of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation.

7.      The instructions in the Solicitation Package, including in the Ballots, adequately informed the Voting Parties of the deadline to submit completed Ballots of November 7, 2019 and how to properly complete and submit the Ballots.

8.      Modifications made to the Plan, including those set forth in the *First Amended Joint Pre-Packaged Plan of Reorganization of Arsenal Resources Development LLC and its Debtor Affiliates* [Docket No. 197] (the "***Amended Plan***"), following the solicitation of votes thereon do not adversely change the treatment of the claim of any Voting Party and therefore satisfy the requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and no further solicitation is required.

9.      Accordingly, the Solicitation Package, including the Ballots, adequately addressed the particular needs of the Chapter 11 Cases and are appropriate, and the Ballots are hereby approved in all respects. The Solicitation Procedures were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, were conducted in good faith, complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and all other applicable non-bankruptcy rules, laws, and regulations, and are approved.

10.     Any and all objections and reservations of rights to the Solicitation and the Solicitation Procedures that have not been withdrawn, waived, or resolved prior to the Confirmation Hearing are hereby overruled on the merits.

## VI.    Voting

11.     As set forth in the Voting Affidavit, 100% in number and 100% in dollar amount of the Voting Parties voted to accept the Plan, and votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures, and the Local Rules.

## VII.   Confirmation of the Plan

12.     The requirements for Confirmation set forth in sections 1129(a) and 1129(b), which include by reference sections 1122(a) and 1123(a)(1), of the Bankruptcy Code have been satisfied.

The Plan, attached hereto as **Exhibit A**, is confirmed pursuant to section 1129 of the Bankruptcy Code.

13.     Any and all objections and reservations of rights to the Plan that have not been withdrawn, waived, or resolved prior to the Confirmation Hearing are hereby overruled on the merits.

14.     Each term of the Plan, the Plan Supplement, and each Exhibit thereto is incorporated herein by reference, and, collectively, are an integral part of this Order.  The terms of the Plan, the Plan Supplement, all Exhibits thereto, and all other relevant and necessary documents are authorized and shall be valid, effective and binding as of the Effective Date, upon execution and delivery, as applicable, in accordance with their terms without the need for any further notice to or action, order or approval of the Court.  This Order constitutes the Court's approval, as of the Effective Date, of the compromises and settlements of all Claims, Equity Interests and controversies described in paragraph D of this Order or as otherwise set forth in the Plan, and such compromises and settlements shall be effective and binding on all parties in interest on the Effective Date. The failure to specifically include or refer to any particular article, section, or provision of the Plan or any related document in this Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

15.     To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or this Order, and effective as of the Effective Date: (i) the rights afforded in the Plan and the treatment of all Claims and Equity Interests therein will be in exchange for and in complete satisfaction, settlement, discharge and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors

or any of their assets, property, or Estates; (ii) the Plan will bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders abstained from voting to accept or reject the Plan or voted to reject the Plan; (iii) all Claims and Equity Interests will be satisfied, discharged and released in full, and the Debtors' liability with respect thereto will be extinguished completely, including any liability of the kind specified under section 502(g), 502(h) or 502(i) of the Bankruptcy Code; and (iv) except as otherwise expressly provided for in the Plan, all Entities will be precluded from asserting against, derivatively on behalf of, or through, the Debtors, the Debtors' Estates, the Reorganized Debtors, each of their successors and assigns, and each of their assets and properties, any other Claims or Equity Interests based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

16. **THE DISCHARGE, COMPROMISES, SETTLEMENTS, RELEASES, EXCULPATIONS, AND INJUNCTIONS SET FORTH IN ARTICLE XI OF THE PLAN ARE HEREBY APPROVED IN THEIR ENTIRETY AS IF SET FORTH HEREIN, AND WILL BE EFFECTIVE IMMEDIATELY AND, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, BINDING ON ALL PARTIES IN INTEREST ON THE EFFECTIVE DATE; PROVIDED, THAT NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN OR IN THE PLAN, THE NON-DEBTOR AFFILIATES SHALL NOT BE ENTITLED TO THE DISCHARGE AND THE EXCULPATION CONTAINED IN ARTICLE XI OF THE PLAN; PROVIDED, FURTHER, THAT, NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN OR IN THE PLAN, EXCULPATION SHALL NOT BE EXTENDED TO ACTS OR OMISSIONS RELATING TO THE RBL CREDIT AGREEMENT, THE RBL FACILITY, THE TERM LOAN CREDIT**

AGREEMENT, THE TERM LOAN DOCUMENTS, THE SELLER NOTES AND/OR THE SELLER NOTES DOCUMENTS OTHER THAN TO THE EXTENT RELATING TO OR ARISING OUT OF THE CHAPTER 11 CASES.    ENTRY OF THIS ORDER CONSTITUTES THE COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DISCHARGE, COMPROMISES, SETTLEMENTS, RELEASES, EXCULPATIONS AND INJUNCTIONS DESCRIBED IN THE PLAN BY THE DEBTORS, REORGANIZED DEBTORS, AND THE DEBTORS' ESTATES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND ITS FINDING OF THE MATTERS IN PARAGRAPH D OF THIS ORDER.

17.    PURSUANT TO SECTION 1123(B) AND ANY OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY AND ITS RESPECTIVE ASSETS AND PROPERTY ARE, AND ARE DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED BY THE DEBTORS, REORGANIZED DEBTORS, AND THE DEBTORS' ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RELATED PARTIES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, FROM ANY AND ALL CAUSES OF ACTION, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR

UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, THAT THE DEBTORS, REORGANIZED DEBTORS, OR THE DEBTORS' ESTATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR CAUSE OF ACTION AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY (OR THAT ANY HOLDER OF ANY CLAIM, INTEREST, OR CAUSE OF ACTION COULD HAVE ASSERTED ON BEHALF OF THE DEBTORS), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' CAPITAL STRUCTURE, THE ASSERTION OR ENFORCEMENT OF RIGHTS AND REMEDIES AGAINST THE DEBTORS, THE DEBTORS' IN OR OUT OF COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR AND ANOTHER DEBTOR, AND/OR AN AFFILIATE OF A DEBTOR, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, EXECUTION, AMENDMENT, OR FILING OF THE RSA, THE DISCLOSURE STATEMENT, THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE PLAN SUPPLEMENT), THE RBL CREDIT AGREEMENT, THE RBL FACILITY, THE TERM LOAN CREDIT AGREEMENT, THE TERM LOAN FACILITY, THE SELLER NOTES, THE SELLER NOTE DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE DIP FACILITY, THE NEW RBL FACILITY DOCUMENTS, THE NEW RBL FACILITY, THE NEW ARDH1 CONSTITUENT DOCUMENTS, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT

**CREATED OR ENTERED INTO BEFORE OR DURING THE CHAPTER 11 CASES, ANY PREFERENCE, FRAUDULENT TRANSFER, OR OTHER AVOIDANCE CLAIM ARISING PURSUANT TO CHAPTER 5 OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, THE CHAPTER 11 CASES (INCLUDING THE FILING THEREOF), THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING THE NEW ARDH1 EQUITY), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE RELATED OR RELATING TO ANY OF THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE RSA, THE NEW RBL FACILITY, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT AND/OR ANY ASSUMED, ASSIGNED, AMENDED OR NEW GATHERING AGREEMENT EXECUTED IN CONNECTION WITH THE PLAN) EXECUTED TO IMPLEMENT THE PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN.**

18.    **ENTRY OF THIS ORDER SHALL CONSTITUTE THE COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES DESCRIBED IN THE PLAN BY THE DEBTORS, REORGANIZED DEBTORS, AND THE DEBTORS' ESTATES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND FURTHER, SHALL CONSTITUTE ITS FINDING THAT EACH RELEASE DESCRIBED IN THE PLAN IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, A GOOD FAITH SETTLEMENT AND COMPROMISE OF SUCH CAUSES OF ACTION; (2) IN THE BEST INTEREST OF THE DEBTORS, REORGANIZED DEBTORS, THE DEBTORS' ESTATES AND ALL HOLDERS OF CLAIMS, EQUITY INTERESTS AND CAUSES OF ACTION; (3) FAIR, EQUITABLE, AND REASONABLE; (4) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (5) SUBJECT TO THE TERMS AND PROVISIONS OF THE PLAN AND THIS ORDER, A BAR TO THE DEBTORS, REORGANIZED DEBTORS, AND THE DEBTORS' ESTATES ASSERTING ANY CAUSE OF ACTION, OR LIABILITY RELATED THERETO, OF ANY KIND WHATSOEVER, AGAINST ANY OF THE RELEASED PARTIES OR THEIR ASSETS AND PROPERTY.**

19.    **PURSUANT TO SECTION 1123(B) AND ANY OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THIS ORDER, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, THE ADEQUACY OF WHICH**

IS HEREBY CONFIRMED, EACH RELEASED PARTY AND ITS RESPECTIVE ASSETS AND PROPERTY ARE, AND ARE DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED BY EACH RELEASING PARTY, IN EACH CASE ON BEHALF OF THEMSELVES AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' IN OR OUT OF COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR, ANOTHER DEBTOR AND/OR AN AFFILIATE OF A DEBTOR, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, EXECUTION, AMENDMENT, OR FILING OF THE RSA, THE DISCLOSURE STATEMENT, THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE PLAN SUPPLEMENT), THE RBL CREDIT AGREEMENT, THE RBL FACILITY, THE TERM LOAN CREDIT AGREEMENT, THE TERM LOAN FACILITY, THE SELLER NOTES, THE SELLER NOTE DOCUMENTS, THE DIP FACILITY DOCUMENTS, THE

**DIP FACILITY, THE NEW RBL LOAN DOCUMENTS, THE NEW RBL FACILITY, THE NEW ARDH1 OPERATING AGREEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT RELATING TO ANY OF THE FOREGOING, CREATED OR ENTERED INTO BEFORE OR DURING THE CHAPTER 11 CASES, ANY PREFERENCE, FRAUDULENT TRANSFER, OR OTHER AVOIDANCE CLAIM ARISING PURSUANT TO CHAPTER 5 OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, THE CHAPTER 11 CASES (INCLUDING THE FILING THEREOF), THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN (INCLUDING THE NEW ARDH1 EQUITY), OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE RELATED OR RELATING TO ANY OF THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (A) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE RSA, THE NEW RBL FACILITY, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT**

16

AND/OR ANY ASSUMED, ASSIGNED, AMENDED OR NEW GATHERING AGREEMENT EXECUTED IN CONNECTION WITH THE PLAN) EXECUTED TO IMPLEMENT THE PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN OR (B) ANY PERSON FROM ANY CLAIM OR CAUSES OF ACTION RELATED TO AN ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER BY A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE BY SUCH PERSON.

20.     EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR OBLIGATIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN OR THIS ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE XI.E OR ARTICLE XI.F OF THE PLAN, DISCHARGED PURSUANT TO ARTICLE XI.C OF THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE XI.D OF THE PLAN, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING,

**PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE INJUNCTION DOES NOT ENJOIN ANY PARTY UNDER THE PLAN OR UNDER ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE ATTACHED TO THE DISCLOSURE STATEMENT OR SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN FROM BRINGING AN ACTION TO ENFORCE THE TERMS OF THE PLAN OR SUCH DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE ATTACHED TO THE DISCLOSURE STATEMENT OR SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN**

21.    The Debtors and Reorganized OpCo Debtors are authorized in their discretion to grant releases to any Holders of OpCo General Unsecured Claims that have agreed to discounted or delayed payment on account of such OpCo General Unsecured Claims.

22.     The Debtors shall cause to be served a notice of the entry of this Order and occurrence of the Effective Date, substantially in form attached hereto as **Exhibit B** (the "***Confirmation Notice***"), upon (a) all parties listed in the creditor matrix maintained by the Debtors' claims and noticing agent, Prime Clerk LLC, and (b) such additional persons and entities as deemed appropriate by the Debtors, no later than five (5) business days after the Effective Date, or as soon as reasonably practicable thereafter.

## VIII.   Implementation of the Plan

23.     Upon effectiveness of this Order, the Debtors and the Reorganized Debtors, as applicable, shall be authorized to take any and all actions as may be necessary or appropriate to effectuate, implement, consummate and further evidence the terms and conditions of the Plan, including the Restructuring Transactions, the New ARDH1 Operating Agreement, the winding up and liquidation of the HoldCo Debtors, and the filing of appropriate certificates or articles of incorporation or formation, reincorporation, merger, conversion, dissolution, cancellation or other organizational documents, as applicable, pursuant to applicable state law, including certificates of cancellation with respect to the HoldCo Debtors, without the need for any further notice to or action, order or approval of the Court.

24.     The Debtors or Reorganized Debtors, as applicable, shall execute any certificates of cancellation with respect to the HoldCo Debtors as of the Effective Date and such certificates shall be filed at a date as soon as reasonably practicable after the Effective Date, while accounting for the completion of the winding up and preparation and issuance of all necessary tax forms including the Schedules K-1 (defined below).

25.     The Reorganized Debtors shall prepare and issue all necessary tax forms, including any a Schedule K-1 (collectively, the "***Schedules K-1***"), and make any payments in respect of fees

and costs related thereto, for any Debtor or Reorganized Debtor, or any of their Affiliates, as applicable, for any taxable year.

## IX.    Vesting of Assets in the Reorganized Debtors

26.    Except as may otherwise be provided in the Plan or this Order, on or after the Effective Date, all property and assets of the Reorganized Debtors' Estates (including Causes of Action and Avoidance Actions, but only to the extent such Causes of Action and Avoidance Actions have not been waived or released pursuant to the terms of the Plan, pursuant to an order of the Court, or otherwise) and any property and assets acquired by the OpCo Debtors pursuant to the Plan, will vest in the Reorganized OpCo Debtors, free and clear of all Liens or Claims. Except as may be otherwise provided in the Plan, on and after the Effective Date, the Reorganized OpCo Debtors may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan, the Confirmation Order or the Reorganized OpCo Debtors Constituent Documents.

## X.    Issuance and Distribution of the New ARDH1 Equity

27.    To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance, and distribution of the New ARDH1 Equity pursuant to the terms of the Plan comply with section 1145 of the Bankruptcy Code and shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. or state law.

## XI.    Management Incentive Plan

28.    For the avoidance of doubt, entry of this Order by the Court shall not be construed to be the Court's approval or endorsement of the MIP or any terms thereof.

## XII.    Restructuring Expenses

29.    The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) without the requirement to file a fee application with the Court and without any requirement for Bankruptcy Court review or approval; *provided*, that the Debtors and the Reorganized Debtors (as applicable) shall have the right to review and object to any such Restructuring Expenses on reasonableness grounds.

## XIII.    New RBL Loan Documents

30.    On the Effective Date, the Debtors and the Reorganized OpCo Debtors, as applicable, are authorized without further approval of the Court to enter into the New RBL Loan Documents and to perform their obligations thereunder, including the payment or reimbursement of certain fees, expenses, losses, damages or indemnities (as set forth in the New RBL Facility Commitment Letter (defined in the Final DIP Order[6])). The New RBL Loan Documents shall constitute legal, valid, binding, and authorized joint and several obligations of the Reorganized OpCo Debtors enforceable in accordance with their terms and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan, or this Order. On the Effective Date, all Liens and security interests granted pursuant to, or in connection with the New RBL Loan Documents (x) shall be valid, binding, perfected, enforceable first priority Liens and security interests in the property subject to a security interest granted by the applicable Reorganized OpCo Debtors

---

[6]    The "***Final DIP Order***" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 162].

pursuant to the New RBL Loan Documents, with the priorities established in respect thereof under applicable non-bankruptcy law and (y) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable law, the Plan, or this Order.

31.     The New RBL Agent is authorized to file, with the appropriate authorities, financing statements, amendments thereto, or assignments thereof and other documents, including mortgages or amendments or assignments thereof in order to evidence the first priority Liens, pledges, mortgages, and security interests granted in connection with the New RBL Loan Documents. The guaranties, mortgages, pledges, Liens, and other security interests granted in connection with the New RBL Loan Documents are granted in good faith as an inducement to the lenders of the New RBL Facility to extend credit thereunder, shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance and the priorities of such Liens, mortgages, pledges, and security interests shall be as set forth in the New RBL Loan Documents.

## XIV.    Disallowance of Claims

32.     Except as otherwise specifically provided for in the Plan or this Order or as otherwise agreed, Holders of Unimpaired Claims need not file Proofs of Claim, and any and all Proofs of Claim filed with respect to Unimpaired Claims or an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged from the claims register on the Effective Date without the need for any further notice to or action, order, or approval of the Court.  The Reorganized OpCo Debtors shall satisfy any monetary defaults under any Executory Contract or Unexpired Lease to be assumed under the Plan, to the extent required by section 365(b)(1) of the Bankruptcy Code, upon assumption thereof in the ordinary course of business.

33.     Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Court within 30 days after the Effective Date.  Solely to the extent that an Entity is required to file a Proof of Claim and the Debtors or the Reorganized OpCo Debtors, as applicable, do not determine, and without the need for any further notice to or action, order, or approval of the Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in Article VIII of the Plan.

34.     All Proofs of Claim required to be filed by the Plan that are filed after the date that they are required to be filed pursuant to the Plan shall be disallowed and forever barred, estopped and enjoined from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized OpCo Debtors, the Estates or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized OpCo Debtors, as applicable, or further notice to, or action, order or approval of the Court or any other Entity in accordance with Article VI.E of the Plan.

## XV.     Retained Causes of Action

35.     The Debtors' list of Retained Causes of Action, attached as Exhibit G to the Plan Supplement[7] is hereby replaced in its entirety by the list of Retained Causes of Action attached hereto as **Exhibit C**.

## XVI.     Treatment of Executory Contracts and Unexpired Leases

36.     The Executory Contract Procedures are approved in all respects.

---

[7]     See the *Notice of Filing of Amended Plan Supplement for First Amended Joint Pre-Packaged Plan of Reorganization of Arsenal Resources Development LLC and its Debtor Affiliates* [Docket No. 195].

37.     As of the Effective Date, (i) each of ARDH1 and each OpCo Debtor shall be deemed to have assumed each Executory Contract and Unexpired Lease (subject to any amendments the parties to such Executory Contract or Unexpired Lease agree upon) to which it is a party in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, without the need for any further notice to or action, order or approval of the Court, unless such Executory Contract or Unexpired Lease:  (a) was assumed or rejected previously by such Debtor; (b) expired or terminated pursuant to its own terms prior to the Effective Date; (c) is the subject of a motion to reject filed on or before the Effective Date; (d) is otherwise identified in the Plan Supplement as an Executory Contract or Unexpired Lease to be rejected before the Effective Date; or (e) is to be rejected pursuant to the terms of the Plan, and (ii) each HoldCo Debtor shall be deemed to have rejected each Executory Contract and Unexpired Lease to which it is a party, except as otherwise provided in the Plan,  the Plan Supplement, or this Order, pursuant to, and subject to the requirements of, sections 365 and 1123 of the Bankruptcy Code and in accordance with the terms and conditions of Article VI of the Plan, the Plan Supplement, and this Order.  ARDH1 or Reorganized ARDH1, as applicable, shall be authorized to determine which Reorganized OpCo Debtor shall be the assignee of any Executory Contract or Unexpired Lease assumed by a HoldCo Debtor.  The assumption of any Executory Contracts and Unexpired Leases may include the assignment of certain of such contracts to one or more Reorganized OpCo Debtors.  This Order constitutes an order of the Court under sections 365 and 1123(b) of the Bankruptcy Code approving the above-described assumptions, assignments and rejections, and no further notice to or action, order or approval of the Court shall be required.

38.     In the event of a dispute regarding (a) the amount of any Cure Claims, (b) the ability of the Reorganized OpCo Debtors to provide "adequate assurance of future performance" (within

24

the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or (c) any other matter pertaining to assumption or the payment of Cure Claims required by section 365(b)(1) of the Bankruptcy Code, payment of a Cure Claim, if any, shall occur as soon as reasonably practicable after entry of a Final Order or Final Orders resolving such dispute and approving such assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date; *provided* that until any such dispute is resolved, section 365 of Bankruptcy Code shall remain in full force and effect with respect to such Executory Contract or Unexpired Lease, including the right of the Debtors (with the consent of the Required Consenting Term/Seller Stakeholders) or Reorganized OpCo Debtors, as applicable, at any time to move to reject any Executory Contract or Unexpired Lease based upon the existence of any unresolved dispute or upon a resolution of such dispute that is unfavorable to the Debtors or Reorganized Debtors.

39.     Any and all objections or reservations of rights in connection with the assumption or rejection of an Executory Contract or Unexpired Lease under the Plan or the proposed cure in the ordinary course by the Reorganized OpCo Debtors, if any, are overruled on their merits. Any non-Debtor party to an Executory Contract or Unexpired Lease that is assumed or assumed and assigned shall be deemed to have consented to such assumption or assumption and assignment.

**XVII.  Insurance Policies; Sureties.**

40.     Notwithstanding anything herein or in the Plan to the contrary, on the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Reorganized OpCo Debtors shall be deemed to have assumed all insurance policies and any agreements, documents and instruments related thereto, including all D&O Liability Insurance Policies. Entry of this Order constitutes the Court's approval of the Reorganized OpCo Debtors' assumption of all such insurance policies, including the D&O Liability Insurance Policies. Notwithstanding anything to the contrary

contained in the Plan, Confirmation shall not discharge, impair or otherwise modify any indemnity obligations presumed or otherwise referenced in the foregoing insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation shall survive the Effective Date.

41.     After the Effective Date, the Reorganized OpCo Debtors are authorized to take all steps necessary to secure the six-year extended reporting period under the D&O Side A DIC Liability Insurance Policies.

42.     Notwithstanding any other provisions of the Plan, this Order, or any other order of this Bankruptcy Court, on the Effective Date, all rights and obligations related to the (i) Debtors' surety bonds issued by Lexon Insurance Company (the "*Surety*") and maintained in the ordinary course of business; (ii) surety payment and indemnity agreements, setting forth the Surety's rights against the Debtors, and the Debtors' obligations to pay and indemnify the Surety from any loss, cost, or expense that the Surety may incur, in each case, on account of the issuance of any surety bonds on behalf of the Debtors; (iii) surety collateral agreements governing collateral, if any, in connection with the Debtors' surety bonds; and/or (iv) ordinary course premium payments to the Surety for the Debtors' surety bonds (collectively, the "*Surety Bond Program*," and the Debtors' obligations arising therefrom, the "*Surety Bond Obligations*") shall be reaffirmed and ratified by the applicable Reorganized Debtors and continue in full force and effect and are not discharged or released by the Plan in any way.  The Surety Bond Program and all Surety Bond Obligations related thereto shall be treated by the Reorganized Debtors and the Surety in the ordinary course of business as if these Chapter 11 Cases had not been commenced.  For the avoidance of any doubt, with a reservation of rights to all parties, and only to the extent applicable, any agreements related to the Surety Bond Program are assumed by the Debtors and the Reorganized Debtors pursuant to

section 365 of the Bankruptcy Code upon the Effective Date.  Nothing in the Plan or this paragraph shall affect in any way the Surety's rights against any non-debtor, or any non-debtor's rights against the Surety, including under the Surety Bond Program or with regard to the Surety Bond Obligations.

## XVIII. Gathering Agreements Settlements

43.    *EQM Gathering Agreements Assumption and Settlement.* On the Effective Date, the Existing EQM Agreements (defined below) shall be assumed, assigned and amended in accordance with paragraphs 49 to 57 of this Order.

44.    *Fullstream Gathering Agreements Assumptions and Settlement.* On the Effective Date, the Fullstream Gathering Agreements shall be amended on terms consistent with the term sheet attached as Exhibit C to the First Day Declaration (as so amended, the "***Amended Fullstream Agreement***") and the Amended Fullstream Agreement shall be assigned to a Reorganized OpCo Debtor. Upon such amendment, assumption and assignment, (i) Fullstream shall not be entitled to any distributions under the Plan (other than the cure payments set forth in the Amended Fullstream Agreement), including on account of ARE Available Cash or the TCO Gathering Agreement Payment and (ii) Fullstream releases any Claims against any Debtor or Reorganized Debtor, and the Debtors and Reorganized Debtors release any Claims against Fullstream, arising under or in connection with the Fullstream Gathering Agreements; *provided*, that the foregoing is not a release of any Claims arising from and after the Effective Date under or in connection with the Amended Fullstream Agreement, including the related cure payments contained therein.  Notwithstanding anything else in this Order, any "Dedication" and conveyance of "Gathering Rights" (each as defined in the Amended Fullstream Agreement) from any Debtor to Goff Connector LLC shall be a valid and binding transfer of interests and the recordation of any documents evidencing such a

transfer shall be deemed to be recorded as of the Effective Date, prior to any other property interests granted hereunder or pursuant to the Plan or effectuating documents.

45.    *DTE-AGS Gathering Agreements Assumption and Settlement.* On the Effective Date, the DTE-AGS Gathering Agreements shall be deemed terminated and a Reorganized OpCo Debtor shall enter into one or more agreements having terms consistent with the term sheet attached as Exhibit A to the Goetz Confirmation Declaration and such other terms as the parties may mutually agree (collectively, the "***New DTE-AGS Agreements***"). On and after the Effective Date, (i) DTE-AGS shall be entitled to cure payments in the amount of $700,000 on the schedule set forth in the New DTE-AGS Agreements, but shall not be entitled to any other distribution under the Plan, including on account of ARE Available Cash or the TCO Gathering Agreement Payment, and (ii) DTE-AGS shall be a Released Party and a Releasing Party for all purposes under the Plan; *provided*, that the foregoing is not a release of (a) any Claims arising from and after the Effective Date under or in connection with the New DTE-AGS Agreements, including the related cure payments contained therein or (b) outstanding contractual obligations owed in the ordinary course to DTE-AGS's Related Parties (other than DTE-SGG) from the Debtors or other Released Parties or owed to the Debtors or other Released Parties from DTE-AGS's Related Parties (other than DTE-SGG).

46.    *DTE-SGG Gathering Agreements Termination and Settlement.* On the Effective Date, the DTE-SGG Gathering Agreements shall be deemed terminated and a Reorganized OpCo Debtor shall enter into one or more agreements having terms consistent with the term sheet attached as Exhibit B to the Goetz Confirmation Declaration and such other terms as the parties may mutually agree (collectively, the "***New DTE-SGG Agreements***"). On and after the Effective Date, (i) DTE-SGG shall be entitled to cure payments in the amount of $3.25 million on the

schedule set forth in the New DTE-SGG Agreements, but shall not be entitled to any other distribution under the Plan, including on account of ARE Available Cash or the TCO Gathering Agreement Payment, and (ii) DTE-SGG shall be a Released Party and a Releasing Party for all purposes under the Plan; *provided*, that the foregoing is not a release of (a) any Claims arising from and after the Effective Date under or in connection with the New DTE-SGG Agreements, including the related cure payments contained therein or (b) outstanding contractual obligations owed in the ordinary course to DTE-SGG's Related Parties (other than DTE-AGS) from the Debtors or other Released Parties or owed to the Debtors or other Released Parties from DTE-SGG's Related Parties (other than DTE-AGS).

47.    *TCO Gathering Agreements*. The TCO Gathering Agreements have terminated, TCO will receive the treatment set forth in the Plan and TCO shall be a Released Party and Releasing Party for all purposes under the Plan.  In addition, the Debtors or a Reorganized OpCo Debtor shall negotiate in good faith with TCO for a new services agreement(s) with TCO.  The negotiation period shall run for 30 days from the date of entry of the New DTE-SGG Agreement.

48.    *IOG-Joint Development Agreement*. On the Effective Date, ARD and IOG Resources, LLC ("***IOG***") agree to mutually terminate the Joint Development Agreement, dated as of December 21, 2018 (the "***IOG JDA***") and Reorganized ARD and IOG shall enter into a new agreement having terms consistent with the term sheet attached as Exhibit C to the Goetz Confirmation Declaration (collectively, the "***New IOG Agreement***"). Upon such termination of the IOG JDA and entry into the New IOG Agreement, as of the Effective Date: (i) IOG shall not hold any Claims or Causes of Action against ARD or any other Debtors under the IOG JDA and is not entitled to any distribution under the Plan with respect to the IOG JDA and (ii) IOG releases any Claims or Causes of Action against any Debtor or Reorganized Debtor under the IOG JDA,

and the Debtors and Reorganized Debtors release any Claims or Causes of Action against IOG, arising under or in connection with the IOG JDA; *provided*, that the foregoing is not a release of any Claims or Causes of Action arising from and after the Effective Date under or in connection with the New IOG Agreement.

## XIX.    Assumption, Assignment and Modification of Existing EQM Agreements

49.    ARE and EQM are parties to firm transportation service agreements identified as Contract No. CW2239579-700 ("*FTS 700*") and Contract No. CW2239335-510 ("*FTS 510*" and, together with FTS 700, the "*EQM Service Agreements*") dated August 1, 2017.  ARE, through a predecessor, and EQM are also parties to Credit Agreements dated July 29, 2011 and August 18, 2010 (collectively, the "*EQM Credit Agreements*" and together with the EQM Service Agreements, the "*Existing EQM Agreements*").   On the Effective Date, (i) ARE shall conditionally assume the Existing EQM Agreements and assign the Existing EQM Agreements to a Reorganized OpCo Debtor to be determined (the "*ARE Assignee*") and (ii) ARE Assignee and EQM shall modify the EQM Service Agreements in the form substantially consistent with the term sheet attached as Exhibit D to the First Day Declaration or as otherwise agreed by the ARE Assignee and EQM subject to the terms of the RSA (the "*Modified EQM Service Agreements*"), subject in all respects to the terms and conditions of Article XIX of this Order.

50.    Notwithstanding anything in the Plan, or this Order, the following shall be conditions (the "*EQM Assumption Conditions*") to the assumption, assignment and modification of the EQM Service Agreements and the EQM Credit Agreements:

a.    ARE shall have indefeasibly paid EQM all sums due and owing under the Existing EQM Agreements on or before the Effective Date.  Upon the Effective Date, and provided all of the remaining EQM Assumption Conditions are satisfied or waived in writing, ARE Assignee shall be deemed to have assumed the

obligations of ARE under the Existing EQM Agreements to pay any amounts that have accrued under the terms of the Existing EQM Agreements but are not yet due and payable as of the Effective Date;

b.    ARE Assignee shall have executed and delivered to EQM an Assumption Agreement substantially in the following form (the "*Assumption Agreement*"):

> [Designated Reorganized OpCo Debtor] ("Assignee") for value received, and intending to be legally bound, hereby assumes and agrees to be bound by the Modified EQM Service Agreements and to timely fulfill, perform, pay and discharge all of the obligations of ARE in connection with the Modified EQM Service Agreements. Assignee agrees that nothing in ARE's bankruptcy proceeding has resulted, or will result, in the discharge or modification of any obligations owed to, or rights of, EQM related to the Modified EQM Service Agreements. Assignee reaffirms all of ARE's obligations with respect to the Modified EQM Service Agreements; and

c.    EQM and ARE Assignee shall have executed and delivered the Modified EQM Supply Agreements.

51.    Until the Modified EQM Service Agreements Effective Date, EQM and the ARE Assignee shall continue to perform under the terms of the Existing EQM Agreements from and after the Effective Date, it being acknowledged that the Modified EQM Service Agreements are subject to approval by the Federal Energy Regulatory Commission ("*FERC*"). EQM shall submit the Modified EQM Service Agreements to FERC for approval promptly (and in any event no later than two (2) Business Days) after the Effective Date. EQM and ARE Assignee shall use their reasonable best efforts to have FERC approve the Modified EQM Supply Agreement as quickly as feasible (including ARE and/or ARE Assignee filing public comments with FERC in support thereof) and shall work in good faith to address any requested changes by FERC and neither EQM, ARE, any of the Debtors nor ARE Assignee shall seek to delay or impede FERC approval of the Modified EQM Service Agreements. On the first Business Day following the date upon which

FERC approves the Modified EQM Service Agreements, the Modified EQM Service Agreements (and, for the avoidance of doubt, the EQM Credit Agreements) shall be deemed permanently assumed and assigned by the ARE Assignee (the "***Modified EQM Service Agreements Effective Date***") and shall be fully effective from and after the Modified EQM Service Agreements Effective Date.

52.    To the extent FERC denies approval of the modifications to the Existing EQM Agreements contemplated by the Modified EQM Service Agreements, does not make a ruling within 75 days of submission or demands material economic changes as a condition to such approval, at the option of either EQM or the ARE Assignee, such modifications shall be deemed null and void and ARE, the ARE Assignee and EQM agree that for a period of 60 days after such denial they shall  negotiate further modifications in good faith to achieve FERC approval, provided neither EQM nor the ARE Assignee shall be required to agree to any material economic changes to the Modified EQM Service Agreements.  During such 60-day period, EQM and the ARE Assignee shall continue to perform their respective obligations under the Existing EQM Agreements.

53.    If, notwithstanding such good faith negotiations, FERC does not approve such further modifications (or ARE, the ARE Assignee and EQM cannot agree to further modifications to the Modified EQM Service Agreements), ARE and the ARE Assignee may deem the Existing EQM Agreements to be rejected in the Chapter 11 Cases; *provided*, that the ARE Assignee shall be liable for all accrued and unpaid obligations owing under the Existing EQM Agreements from the Effective Date to and including the date of rejection and shall pay any such amounts owing to EQM in cash as a condition to any such rejection.  To the extent ARE and the ARE Assignee elect to have the Existing EQM Agreements rejected, (i) the conditional assignment and assumption

described herein shall be revoked and deemed null and void, (ii) the Existing EQM Agreements shall be deemed rejected Executory Contracts under the Plan in the chapter 11 case of ARE, (iii) other than obligations which arise or are incurred on or after the Effective Date but prior to rejection, the ARE Assignee shall have no further obligations as to the Existing EQM Agreements (including as to future unmet minimum volume commitments) and (iv) all parties' rights are reserved as to the other effect of such rejection and the treatment of any resulting rejection damage claims in the Chapter 11 Cases. Other than a denial by FERC of the modifications to the Existing EQM Agreements, neither ARE nor the ARE Assignee shall have any right to seek rejection of the Existing EQM Agreements.

54.     Upon the Modified EQM Service Agreements Effective Date, Debtors, on behalf of themselves, their respective Estates and their respective directors, officers, managers, employees, agents and independent contractors shall be deemed hereby to release EQM, its owners, partners, limited partners, general partners, parents, affiliates, subsidiaries, directors, officers, managers, employees, agents and independent contractors (the "***EQM Released Parties***") of all obligations, causes of action, demands, setoffs, recoupments, and other claims (of whatever nature) related in any way to the Existing EQM Agreements and the business relationship between the Debtors and any of the EQM Released Parties as of the Modified EQM Supply Agreements Effective Date.

55.     Upon the Modified EQM Supply Agreements Effective Date, EQM, on behalf of itself and its respective directors, officers, managers, employees, agents and independent contractors shall be deemed hereby to release the Debtors, the Debtors' respective Estates and their respective owners, partners, limited partners, general partners, parents, affiliates, subsidiaries, directors, officers, managers, employees, agents and independent contractors (the "***Debtor***

*Released Parties*") of all obligations, causes of action, demands, setoffs, recoupments, and other claims (of whatever nature) related in any way to the Existing EQM Agreements and the business relationship between EQM and any of the Debtor Released Parties as of the Modified EQM Supply Agreements Effective Date.

56.     The Plan and this Order shall not (i) release, discharge or modify the obligations of the Debtor Released Parties or the EQM Released Parties under the Modified EQM Service Agreements arising on or after the Modified EQM Service Agreements Effective Date or (ii) relieve or release ARE or the ARE Assignee from their obligations to pay all amounts due to EQM under the Existing EQM Agreements from the Effective Date to the date of rejection. Notwithstanding the foregoing or anything to the contrary set forth in the Plan or this Order, unless the Existing EQM Agreements are deemed rejected in accordance with the terms hereof, any and all statutory or other lien or interest rights of EQM under applicable law shall expressly survive and shall not be discharged, modified or impaired in any manner whatsoever including, without limitation, by operation of Section 1141 of the Bankruptcy Code.

57.     Unless the Existing EQM Agreements are deemed rejected in accordance the terms hereof, nothing in the Plan or this Order shall release, discharge or modify any indemnification or contribution claim of ARE, the ARE Assignee or EQM for third-party claims arising out of or related to the Existing EQM Agreements or any filed tariff related to the Existing EQM Agreements.  All terms, obligations and times periods set forth in this <u>Article XIX</u> may be modified or waived with the consent of both the ARE Assignee and EQM without further approval by the Court.

## XX.    No Action Required

58.     Under the provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Liability Company Act or

any analogous provisions of the application business organizations law or code of each other state in which the Reorganized OpCo Debtors are incorporated or organized, and section 1142(b) of the Bankruptcy Code, no action of the respective directors, equity holders, managers or members of each of the Debtors or Reorganized Debtors is required to authorize the Debtors or the Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate or effectuate, as the case may be, the Plan, the restructuring, and any contract, assignment, certificate, certificate of dissolution, instrument, or other document to be executed, delivered adopted or amended in connection with the implementation of the Plan.

## XXI.    Governmental Approvals Not Required

59.     This Order constitutes all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

## XXII.   Retention of Rights of Governmental Units

60.     Notwithstanding any provision in the Plan, this Order or other related Plan documents (collectively, "***Plan Documents***"):  Nothing discharges or releases the Debtors, the Reorganized Debtors, or any non-debtor from any right, claim, liability or cause of action of the United States or any State, or impairs the ability of the United States or any State to pursue any claim, liability, right, defense, or cause of action against any Debtor, Reorganized Debtor or non-debtor.  Contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests of or with the United States or any State shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or Reorganized

Debtors under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed and the Debtors and Reorganized Debtors shall comply with all applicable non-bankruptcy law.  All claims, liabilities, rights, causes of action, or defenses of or to the United States or any State shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, defenses, claims, liabilities, or causes of action would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided*, that nothing in the Plan Documents shall alter any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors under non-bankruptcy law with respect to any such claim, liability, or cause of action. Without limiting the foregoing, for the avoidance of doubt, nothing shall:  (i) require the United States or any State to file any proofs of claim or administrative expense claims in the Chapter 11 Cases for any right, claim, liability, defense, or cause of action; (ii) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtors, the Reorganized Debtors or any non-debtor; (iii) be interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (iv) affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (v) constitute an approval or consent by the United States or any State without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (vi) relieve any party from compliance with all licenses and permits issued by governmental units in accordance with non-bankruptcy law.

61.     Nothing herein or in the Plan should be construed to impair the right of the U.S. Trustee to be heard on a motion for substantial contribution.

## XXIII. Severability of Plan Provisions; Nonseverability of Plan Provisions Upon Confirmation

62.     This Order constitutes a judicial determination as to the validity or enforceability of each of the provisions of the Plan in accordance with and subject to Article XII.C of the Plan. Notwithstanding any holding of the Court as to the non-validity or non-enforceability of a specific provision of the Plan, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation.  Each term and provision of the Plan, as it may have been altered or interpreted in accordance with Article XII.C of the Plan, is valid and enforceable pursuant to its terms.

63.     The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, any Exhibit, or any related document in this Order does not diminish or impair the effectiveness of enforceability of such article, section, or provision.

## XXIV. Immediate Binding Effect; Waiver of Stay

64.     Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, or otherwise, upon the occurrence of the Effective Date, this Order is intended to be a Final Order and the period within which an appeal must be filed commences upon entry hereof, and the terms of this Order and the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Equity Interests (irrespective of whether Holders of such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), or 7062.

## XXV.  Retention of Jurisdiction

65.     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Order or the occurrence of the Effective Date, the Court, except as otherwise provided in the Plan or herein, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law.

## XXVI. Post-Confirmation Modifications

66.     Subject to the limitations set forth in the Plan, and subject to the terms of the RSA, after entry of this Order, the Debtors may, upon order of the Court, amend or modify the Plan, in accordance with Bankruptcy Code section 1127(b).  Notwithstanding the foregoing, the Debtors are authorized to make appropriate technical adjustments, remedy any defect or omission, or reconcile any inconsistencies in the Plan, the documents included in the Plan Supplement, any and all Exhibits to the Plan, the Plan Supplement, and this Order without further order of the Court.

## XXVII.        DIP Order Reporting Requirements

67.     Notwithstanding anything to the contrary in the Final DIP Order, the DIP Credit Agreement, or any other Order entered by the Court, during the period beginning on the date this Order is entered and ending on the Effective Date, the Debtors shall have no obligation to file with the Court, serve on any parties, or otherwise provide any party with any report that the Debtors or Reorganized Debtors, as applicable, were obligated to provide under the Final DIP Order, the DIP Credit Agreement or any other Order entered by the Court, and the failure to deliver the foregoing during such period shall not be deemed a violation of, or default under, the Final DIP Order, the DIP Credit Agreement, or any other Order entered by the Court.

## XXVIII.    Cleveland Brothers Equipment Co., Inc.

68.    The Cleveland Brothers' Confirmation Objection is resolved as set forth in this Paragraph.  The Debtors have not determined whether the Claims of Cleveland Brothers Equipment Co., Inc. are Allowed and, to the extent Allowed, whether such Claims (or any portion of such claims) are Class 6B or Class 7A Claims.  To the extent that such Claims are Allowed Other Secured Claims or Allowed OpCo General Unsecured Claims, such Claims will be entitled to the treatment set forth in the Plan, including receiving such treatment so as to render such Allowed Claim Unimpaired within the meaning of section 1124 of the Bankruptcy Code. All parties' rights and arguments as to the treatment of Cleveland Brothers' claims under sections 1124 and 1111(b) of the Bankruptcy Code and the Plan, including whether some or all of Cleveland Brothers claims are entitled to be treated as recourse deficiency claims under section 1111(b)(1)(A) of the Bankruptcy Code, are reserved in their entirety.

## XXIX. Applicable Non-Bankruptcy Law

69.    Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan, and any related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

## XXX.  Substantial Consummation

70.    Substantial consummation of the Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

## XXXI. Separate Plans.

71.    The Plan is a separate Plan for each of the Debtors. Accordingly, the provisions of the Plan, including the definitions and distributions to creditors and equity interest holders, shall apply to the respective assets of, and Claims against, and Equity Interests in, each Debtor's separate Estate.

39

**XXXII.        Closure of Certain Chapter 11 Cases.**

72.        Pursuant to Article XII.D of the Plan, upon the Effective Date, without the need to obtain further approval from the Court, the Chapter 11 Cases of all of the HoldCo Debtors shall be deemed closed as of the Effective Date without prejudice to the rights of any party in interest to seek to reopen such Chapter 11 Cases.

73.        On and after the Effective Date, the Reorganized OpCo Debtors shall be authorized, subject to compliance with Bankruptcy Rule 3022 and any applicable order of the Court, at any time to submit an order or separate orders to the Court under certification of counsel closing any of the Chapter 11 Cases of ARDH1 and the OpCo Debtors (collectively with the Chapter 11 Cases of the HoldCo Debtors, when closed, the "***Closing Cases***") and changing the caption of the Chapter 11 Cases accordingly effective as of the date of such order of the Court.  Notwithstanding anything to the contrary in the foregoing or the Plan, matters concerning Claims may be heard and adjudicated in a non-Closing Case regardless of whether the applicable Claim is against a Debtor in a Closing Case; *provided*, that each Debtor in a Closing Case shall remain responsible for making payments of quarterly fees due and owing to the U.S. Trustee pursuant to 28 U.S.C. §1930(a)(6) in accordance with the terms of the Plan and the Order, up to and including the date such Closing Case is closed; *provided*, *further*, that nothing herein shall authorize the closing of any case *nunc pro tunc* to a date that precedes the date any such order is entered.  Any request for *nunc pro tunc* relief shall be made on motion served on the U.S. Trustee and the Court shall rule on such request after notice and a hearing.  Upon the filing of a motion to close the last Chapter 11 Case of the Debtors, the Reorganized OpCo Debtors shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1(c).

XXXIII.        **Treatment of Hydrocarbon Interests**[8]

74.     Notwithstanding any provision in the Plan, on or after the Effective Date, all Hydrocarbon Interests shall be preserved and remain in full force and effect in accordance with the terms of the granting instruments or other governing documents applicable to such Hydrocarbon Interests, and no Hydrocarbon Interests shall be compromised or discharged by the Plan.  For the avoidance of doubt and notwithstanding anything to the contrary in the preceding sentence, any right to payment arising from a Hydrocarbon Interests, if any, shall be treated as a Claim according to its characteristics and applicable governing law and shall be subject to any allowance, disallowance, discharge, and/or release provided in the Plan.

XXXIV.        **Exemption from Certain Transfer Taxes and Fees**

75.     Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers of property or mortgages from or by the Debtors to the Reorganized OpCo Debtors or any other Person or entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, UCC filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment, and upon entry of this Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

---

[8]    "***Hydrocarbon Interests***" means all rights, titles, interests, and estates, now or hereafter acquired, in and to oil and gas leases, oil, gas, and mineral leases, or other liquid or gaseous hydrocarbon leases, mineral fee interests, overriding royalty and royalty interests, net profit interests, and production payment interests, including any reserved or residual interests of whatever nature.

41

XXXV.        **Reversal**

76.        If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of the Court or any other court, such reversal, modification or vacatur shall not affect the validity or enforceability of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of such order. Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Plan and all related documents or any amendments or modifications thereto.

XXXVI.        **Waiver of Section 341(a) Meeting and Filing of SOFAs and Schedules**

77.        Notwithstanding anything to the contrary in this Order, the Plan, the Scheduling Order, any other order by the Court or any other filings or pleadings made in the Chapter 11 Cases, as of the date of this Order, the requirement that the U.S. Trustee convene a meeting of creditors pursuant to section 341(a) of the Bankruptcy Code is hereby waived and, in accordance with the Scheduling Order, the requirement that the Debtors file SOFAs and Schedules (defined in the Scheduling Order) is permanently excused.

XXXVII.        **This Order Controlling**

78.        If there is any conflict between the Plan, the Plan Supplement, any order of the Court entered prior to the date hereof, or any other instrument or document contemplated by the Plan, on the one hand, and this Order, on the other hand, the terms of this Order shall control.

XXXVIII.        **Effectiveness of Order.**

79.        Notwithstanding Bankruptcy Rules 3020(e) and 6004(h), or any other provision of the Bankruptcy Code or the Bankruptcy Rules, this Order shall be effective at 12:01 a.m. (prevailing Eastern Time) on December 19, 2019.  This Order is and shall be deemed to be a

separate order with respect to each of the Debtors for all purposes.  This Order is intended to be a

Final Order and the period in which an appeal must be filed shall commence upon entry hereof.

Dated: December 19th, 2019
Wilmington, Delaware

BRENDAN L. SHANNON UNITED STATES BANKRUPTCY
JUDGE